[No. 2181.]

MILLER v. THE OURAY ELECTRIC LIGHT AND POWER COMPANY ET AL.

1.  Negligence—Electricity—Defective Wiring—County Jail—Injury to Prisoner by Fire—Pleading.

 Where a prisoner in a county jail was suffocated and killed by the burning of the jail, in an action against an electric light

company a complaint which alleged that the company placed
wires in the building and transmitted a current of electricity
over them for the purpose of lighting the building, that the
wires were negligently and unskillfully placed, reciting the facts
upon which said charge of negligence was based, and that by rea-
son of said negligence the building was set on fire and burned,
causing the death of plaintiff's decedent, stated a cause of action
against said company.

2.  Same—Duty of County Commissioners—Notice—Pleading.

In an action against the individual commissioners of a county
for the wrongful death of a prisoner in a county jail caused by
the burning of the jail, based on the failure of said commis-
sioners to personally examine said jail, a complaint which fails
to allege that said commissioners had knowledge or could by
proper examination have had knowledge of the dangerous con-
dition which caused the fire, and fails to allege in what respect
the failure to make the examination contributed to cause the
fire, is defective.

3.  Negligence—County Commissioners—Duty to Examine Jail—
      Injury to Prisoner by Fire—Liability of Commissioners.

Section 2523, Mills' Ann. Stats., requiring county commis-
sioners to make personal examination of the county jail, its
sufficiency and management at each session of the board and
to correct all irregularities and improprieties therein found, im-
poses a public official duty and the commissioners are not in-
dividually liable thereunder to an action for damages for the
death of a prisoner caused by the burning of the county jail,
alleged to have been caused by their negligent failure to make
such examination.

*Error to the District Court of Ouray County.*

Messrs. STUART & MURRAY and Messrs. STORY &.
STORY, for plaintiff in error.

Messrs. HENRY & SIGFRID, for defendants in
error.

WILSON, P. J.

While Harry W. Hawkins, a minor, was confined
in the jail of Ouray county, charged with a criminal
offense, the building caught on fire and he suffered
death from suffocation.  The fire is charged to have

been the result of defective electric wiring of the building. Mrs. Miller, the mother of the deceased, brought this suit to recover damages for the alleged negligence which caused the death of her son, joining as defendants The Ouray Electric Light and Power Company, the three county commissioners as individuals, the sheriff, and the sureties upon his official bond. The electric light company interposed a demurrer to the complaint, as did also the county commissioners. Each of these demurrers was sustained upon the ground that as to those parties the complaint did not state facts sufficient to constitute a cause of action, and this question alone is involved in the appeal to this court.

Those portions of the complaint which will be sufficient for the understanding of this opinion are as follows:

"2. That at all of the times hereinafter mentioned the defendant, The Ouray Electric Light and Power Company, is and was a corporation maintaining and operating an electric lighting plant and furnishing electric light in the buildings within the city of Ouray, in the county aforesaid, and as a part of said business, it from time to time furnished and placed in the buildings in said city wires for conveying the electrical current used in lighting the buildings, and representing that it had skilled and educated workmen with sufficient electrical knowledge to place in said buildings the necessary wires, over which to convey the electric current used for furnishing light in such manner that there would be no danger therefrom and that such wires would be properly and safely insulated from the buildings and from each other, and was charged with the duty of providing skilled workmen, having sufficient knowledge in the use of electricity, to wire the buildings in such manner as would enable the current to be de-

livered over said wires with safety to the occupants and to said buildings.''

''8. That at the time of the arrest, imprisonment and death of said Harry W. Hawkins, the only county jail within and for said county of Ouray was a building wholly built of wood, tar-paper and other inflammable materials, containing an iron and steel cage or cages in which the prisoners were confined; that no beds were provided in said jail, excepting bunches of dry hay placed in said cages during the night time and stowed in the corridor of the building outside of said cages when not in use for beds; that said building was not provided with any proper means of ventilation; was wholly unfit for the purposes for which it was used; was artificially lighted by currents of electricity sent over wires placed in said building and connected with its electric light plant by the defendant, The Ouray Electric Light and Power Company; that said wires were carried into said building by said defendant by passing them through a knot hole in the side of the building, without protecting said wires from chafing and rubbing, and the wires inside of said jail building were placed and left in contact with the inflammable materials of which said building was constructed and in contact with each other, and were not properly protected so as to prevent said wires from short circuiting and setting fire to said building, and said wires were allowed to become worn and bare and in direct contact with each other and the inflammable materials in said building. And by reason of the unskillful and grossly negligent manner of so conducting and placing the wires in said jail building; leaving of said wires without proper insulation, and in contact with each other and the inflammable materials of said building, and the sending of currents of electricity over said wires, as well as by reason of the inflammable

materials of which said building was constructed, and the keeping and storing of dry hay in said building, said building was in constant and inmminent danger of taking fire, both from within and without, and of burning and suffocating the prisoners kept therein. That the only keys provided for the opening of said building and of the cages therein were carried by the sheriff and his deputy, and the said sheriff and his deputy frequently and habitually went away from said building for many hours at a time; and during the time herein specified it was the regular habit and practice of said sheriff and his deputy to lock the prisoners in their cages for the night, to close and fasten all the doors and shutters of said jail building and then go their several ways to their homes to remain until morning, taking said keys with them and to leave said prisoners fastened therein wholly unprotected and unattended from any danger which might threaten them; of all of which facts the said defendants had full knowledge.''

''10.    That The Ouray Electric Light and Power Company in conducting the wires in said building; in placing and leaving the same therein in manner above specified; in transmitting currents of electricity over said wires, so negligently, unskillfully and improperly placed and kept, was grossly negligent and derelict in the duties imposed upon it, and that said negligence resulted in setting fire to said building, and in causing the death of the said Hawkins.    And the said Lyon, King and Couchman were grossly negligent and derelict in the duties required of them, in that they wholly failed and neglected to provide a proper county jail and beds therein; to see that said building was properly and safely lighted; to see that proper care was taken for the safety of the prisoners confined therein, and in that they wholly failed at each session of the board of county commissioners to

visit the county jail and make a personal examination of its sufficiency, the management thereof, and to correct all irregularities found therein.''

It will be observed that the complaint specifically charges the electric light company with having placed and carried the wires into the jail, and with transmitting a current of electricity over the wires for the purpose of lighting the jail at the time of the fire. It also specifically charged that said company was grossly negligent in the placing of said wires, and recites the facts upon which said charge of negligence is based. It also alleges that the defendant light company was charged with the duty of providing skilled workmen to wire buildings in such manner as would enable the current to be delivered over said wires with safety to the occupants therein, but that said wires were not so placed. In a recent case decided by this court it was said: ''We cannot say, as a matter of law, that proof would not be admissible under the averments of the complaint which would justify a verdict that in leaving the wire exposed as alleged, the defendant was guilty of negligence. If such proof would be admissible, then the complaint, in so far as the charge of negligence is concerned, is sufficient.''—*Walters v. Electric Light Company*, 12 Colo. App. 146.

Upon principle, as well as upon the material facts of negligence involved, the case was very similar to this, and we think the decision of that is not only applicable, but conclusive here. Under the allegations of the complaint, proof would be clearly admissible of the acts charged as constituting negligence, and it would be for a jury to determine as to whether they did constitute it. If it would avail the defendant company at all to show that the building was wired in accordance with the specfic directions of the official or officials having charge of the jail, that

would be a matter of defense, and to be set up as such by the defendant. In our opinion the court erred in holding that the complaint did not state facts sufficient to constitute a cause of action against the electric light company.

The plaintiff bases her claim of the individual liability of the commissioners upon the following section of the statutes:

"It shall be the duty of the county commissioners to make personal examination of the jail of their county, its sufficiency, and the management thereof during each session of the board, and to correct all irregularities and improprieties therein found."— Gen. Stats., sec. 1829; Mills' Ann. Stats., sec. 2523.

It is insisted that this section imposes a double duty upon the commissioners—an obligation to the public, and another to the individual interested, to wit, the prisoner who may be confined within the jail. The complaint in our opinion is defective as to these commissioners, because it does not allege knowledge on their part that the condition of the lighting in the jail was defective or dangerous, nor that they had or could have had such knowledge, if they had made the personal examination which it is alleged they failed to make, nor in what respect their alleged failure to make the required inspection contributed to the accident. It may be conceded that they utterly failed to make these visits to the jail, but yet if such failure was not a contributing cause to the injury, it could not be claimed that they were in any manner liable. There is, however, in our opinion a still more serious objection to the complaint. The duty imposed by this section of the statute was, we think, a public, official duty imposed upon them as a board of county commissioners. If the principle contended for by plaintiff were established, it would lead to absurd and most unreasonable results. We do not believe it to

have been in the contemplation of the lawmakers, and we know of no authority to that effect, that one or more of the county commissioners might be subjected to an action against him or them individually for damages, because a prisoner in the county jail claimed that the food or bedding with which he had been supplied was not of a proper character, or was injurious to his health, or that the building in which he was confined was so defective in its construction as to produce a like result. Actions of this character could be maintained if the present one could, the county commissioners being specially charged as a board of county commissioners representing the county, with the duty of building and keeping in repair county buildings, with the care of all county property, and with the management of the business and concerns of the county.—Gen. Stats., sec. 538; Mills' Ann. Stats., sec. 791.

The quoted section in regard to the jail confers upon them no additional power, but simply requires them to make personal examination of it at stated periods. This is an official duty, owing to the public by virtue of their office, and for a breach of it the statutes specifically provide a remedy by suit upon their official bonds.—Mills' Ann. Stats., sec. 825.

The words "and to correct all irregularities and improprieties therein found" impose no new obligation upon them. This would have been their duty if these words had not been used, by virtue of the statute requiring them to keep public buildings in repair and charging them with the care of all county property, and with the management of all business and concerns of the county. If the contention of plaintiff be the law, then each individual commissioner would be liable in like actions to this, because of damages suffered by an individual by reason of alleged defects in a public highway or in a county bridge, or

in any public building, or in the public grounds in which it might be situate.    To so hold would tend in the large counties of the state, at least, to bring about, as was said by the supreme court of Idaho, "the literal abrogation of the office of county commissioner, for no sane man would assume the position with such a liability attached."—*Worden v. Witt et al.,* 39 Pac. 1114.

The duty imposed by the statute under consideration being with reference to the care, custody and supervision of public property, it would seem clear that the county commissioners as to the performance of that duty come within the class of public officers who are recognized by the authorities as subordinate governmental officers and administrative agents whose duty is owing primarily to the public collectively— to the body politic and not to any particular individual—who act for the public at large.—Mechem on Public Officers, § 590, *et seq.;* Cooley on Torts, p. 442; Shearman and Redfield on Negligence, § 302.

This being true, a breach of the duty here charged will not support an individual action for damages against the commissioners.    Mr. Cooley authoritatively lays down this doctrine, and it is supported by the great weight of authority, and so even in cases where a nonperformance of the duty might prejudice an individual.    This is held not to constitute a private wrong for which the injured party could have redress by individual action.—Cooley on Torts, 2d ed., p. 446, *et seq.;* Mechem on Public Officers, §§ 598, 599, 606; Shearman and Redfield, *supra.* The court did not err in sustaining the demurrer of the county commissioners.

For the reason, however, that the demurrer of the electric light company should not have been sustained, the judgment will be reversed, and the

cause remanded for further proceedings in accordance with the views which we have expressed.

*Reversed.*