James LEAKE, Jerry Couch, John Volpi, Daniel Garcia, James Green, and Commerce City, Colorado, Petitioners,

v.

H. Marie CAIN, nka H. Marie Burrows, individually and as natural mother and next friend of the deceased, Jeffrey Mark Cain, and Delores Chase and Jack Chase, individually and as natural parents and next friends of the deceased Jay Chase, Respondents.

No. 85SC66.

Supreme Court of Colorado, En Banc.

June 9, 1986.

Hall & Evans, Alan Epstein, Arthur R. Karstaedt, III, Denver, for petitioners.

Leland S. Huttner, P.C., Anne M. Vitek, Denver, for respondents.

ERICKSON, Justice.

In this wrongful death action, respondents seek damages for the deaths of their children, who were killed when they were struck by an automobile driven by Ralph Crowe. The trial court granted petitioners' motion for summary judgment. In *Cain v. Leake*, 695 P.2d 798 (Colo.App.1984), the court of appeals reversed and remanded the case for trial. We granted certiorari, and we now reverse and remand to the court of appeals with directions to reinstate the trial court's order granting summary judgment.

## I.

### FACTS

The tragic sequence of events leading to the accident in this case is undisputed. On the evening of September 9, 1978, Ralph Crowe, eighteen years of age, attended a large, outdoor party of teenagers in Commerce City.[1] Over the course of three and one-half hours, Crowe drank eight cups of beer and three cups of alcoholic punch.[2] At approximately 11:30 p.m., Commerce City police officers were dispatched to

---

1. There were between thirty and sixty youths at the party.

2. In his deposition, Crowe stated that the cups held four or five ounces of liquid.

break up the party after a neighbor complained. When the officers arrived at the party, they ordered the teenagers to disperse. Ralph Crowe became disruptive and was handcuffed and detained by the officers. Shortly thereafter, the officers were approached by seventeen-year-old Eddie Crowe, Ralph Crowe's younger brother. Eddie Crowe requested that Ralph be released to him and told the officers that he would drive Ralph home. After noting that Eddie Crowe appeared sober and after checking his driver's license, the officers agreed to permit Ralph Crowe to leave the party with his brother.

Ralph Crowe and another individual left the party as passengers in a vehicle driven by Eddie Crowe. The Crowe brothers took the individual home and then proceeded to a convenience store, where Ralph Crowe purchased some cookies. When the two youths left the store, Ralph Crowe drove the car. He proceeded to a location near Stapleton Airport, where the party which had been broken up by the Commerce City police was to continue. At the new site of the party, the car driven by Ralph Crowe struck six persons on the street, killing two of them (respondents' decedents). Ralph Crowe's blood alcohol content at the time of the accident was .20, well in excess of the legal presumption of intoxication in Colorado.[3]

Respondents filed a wrongful death action[4] in the Denver District Court against Ralph Crowe, James Crowe (the father of Ralph Crowe), the five Commerce City police officers who responded to the party which Ralph Crowe attended on September 9, 1978, and the City of Commerce City.[5] Respondents alleged that the police officers had reason to believe that Ralph Crowe was intoxicated at the time he was detained, and that they negligently failed to take him into custody. Respondents further alleged that the officers were negligent in releasing Ralph Crowe to his younger brother, that it was foreseeable that Ralph Crowe would drive an automobile in an intoxicated condition, and that injury to the public was a foreseeable consequence of the officers' failure to arrest Ralph Crowe.

The police officers and the City of Commerce City (petitioners) filed a motion for summary judgment, contending that the duty of the officers to enforce the law was a public duty, and that the officers' negligence, if any, was not actionable because they did not owe a special duty to the respondents' decedents. After a hearing, the trial court granted petitioners' motion for summary judgment, stating that:

in order for one to recover on a tort claim of negligence brought against a public official by an individual member of the public, they are required to prove by a preponderance of the evidence ... that the defendant owes a special duty to the plaintiff and that [the] duty was breached, resulting in damage or injury.

The court concluded that the Commerce City police officers, in exercising their discretion to release Ralph Crowe, did not owe a special duty to the respondents' decedents.

The court of appeals reversed and held that petitioners were not immune from suit. *Cain v. Leake,* 695 P.2d at 798. In denying immunity, the court of appeals reasoned that (1) the decision of the police officers to release Ralph Crowe was not a

---

**3.** Section 42–4–1202(1)(a), 17 C.R.S. (1984), provides:

"It is a misdemeanor for any person who is under the influence of intoxicating liquor to drive any vehicle in this state." Under section 42–4–1202(2)(c), "[i]f there was [at the time of the offense or within a reasonable time thereafter] 0.10 or more grams of alcohol per one hundred milliliters of blood as shown by chemical analysis of such person's blood ... it shall be presumed that the defendant was under the influence of alcohol." After the accident, Ralph Crowe's blood was tested for alcohol content. The test indicated .20 grams of alcohol per one hundred milliliters of blood.

**4.** §§ 13–21–201 to –204, 6 C.R.S. (1973 & 1985 Supp.).

**5.** James Crowe was subsequently dismissed from the action by stipulation between the parties. Ralph Crowe is not a party to this appeal.

discretionary act and (2) denying immunity would not unduly interfere with the governmental function. The trial court's reliance upon the public duty/special duty distinction in granting summary judgment was not addressed by the court of appeals.

## II.

## DUTY

Nothing is more basic to tort law than the requirement that, in order to recover for the negligent conduct of another, the plaintiff must establish (1) the existence of a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) which actually and proximately caused (4) damage to the plaintiff. *Franklin v. Wilson*, 161 Colo. 334, 422 P.2d 51 (1966); W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* 164–65 (5th ed. 1984). This case focuses on the first element. We must decide whether the Commerce City police officers owed a duty to respondents' decedents to take Ralph Crowe into custody.

## A.

### The Public Duty Doctrine

In granting petitioners' motion for summary judgment, the trial court relied upon what has become known as the "public duty doctrine." The origin of the public duty doctrine can be traced to *South v. Maryland*, 59 U.S. (18 How.) 396, 15 L.Ed. 433 (1855). In *South*, the plaintiff alleged that he was kidnapped and held for a period of four days and released only when he secured the ransom money demanded by his kidnappers. He also asserted that the local sheriff knew that he had been unlawfully detained yet did nothing to obtain his release. The plaintiff sued the sheriff for refusing to enforce the laws of the state and for failing to protect the plaintiff. The circuit court awarded plaintiff a substantial judgment. The Supreme Court reversed and declared that a sheriff's duty to keep the peace was "a public duty, for neglect of which he is amenable to the public, and punishable by indictment only." 59 U.S. (18 How.) at 403.[6]

6. The public duty doctrine was apparently accepted by most state courts in the late nineteenth and early twentieth centuries. The leading treatise on tort law during the era stated:

> The rule of official responsibility, then, appears to be this: That if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages.

T. Cooley, *A Treatise on the Law of Torts* 379 (1879). The author provides an example of particular relevance to this case:

> The rule stated does not depend at all on the grade of the office, but exclusively upon the nature of the duty. This may be shown by taking as an illustration the case of the policeman; one of the lowest grade of public officers. His duty is to serve criminal warrants; to arrest persons who commit offenses in his view, to bring night-walkers to account, and to perform various offices of similar nature. Within his beat he should watch the premises of individuals, and protect them against burglaries and arsons. But suppose he goes to sleep on his beat, and while thus off duty a

robbery is committed or a house burned down, either of which might have been prevented had he been vigilant,—who shall bring him to account for this neglect of duty? Not the individual who has suffered from the crime, certainly, for the officer was not his policeman; was not hired by him, paid by him, or controlled by him; and consequently owed to him no legal duty. The duty imposed upon the officer was a duty to the public—to the State, of which the individual sufferer was only a fractional part, and incapable as such of enforcing obligations which were not individual but general. If a policeman fails to guard the premises of a citizen with due vigilance, the neglect is a breach of duty of exactly the same sort as when, finding the same citizen indulging in riotous conduct, he fails to arrest him; and if the citizen could sue him for the one neglect, he could also for the other.

*Id.* at 381 (footnote omitted). The public duty rule was repeated in subsequent editions of the treatise without criticism. *See* T. Cooley, *A Treatise on the Law of Torts* 446 (2d ed. 1888); 2 T. Cooley, *A Treatise on the Law of Torts* 756–57 (3d ed. 1906); 2 T. Cooley, *A Treatise on the Law of Torts* 385–86 (4th ed. 1932). *See also* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* 1049 (5th ed. 1984).

### 1. *The Colorado Cases*

The public duty rule first surfaced in Colorado in *Miller v. Ouray Electric Light & Power Co.*, 18 Colo.App. 131, 70 P. 447 (1902). The plaintiff's decedent in *Miller* died while he was incarcerated in the Ouray County jail. The plaintiff alleged that defective wiring in the jail caused a fire which resulted in the death. Plaintiff sought to hold the county commissioners liable for the death based upon a statute that required the county commissioners to inspect the county jail and to correct irregularities. The court of appeals held that the statute created only a public duty to insure the safety of the jail, not an individual duty to any person who was incarcerated in the jail. The opinion stated that the obligation of the county commissioners was "an official duty, owing to the public by virtue of their office, and for a breach of it the statutes specifically provide a remedy by suit upon their official bonds." 18 Colo. App. at 138, 70 P. at 449. Without the protection afforded by the public duty rule, the court concluded, no person would be willing to serve as a public officer because of the fear of exposure to liability.

In *People v. Hoag*, 54 Colo. 542, 131 P. 400 (1913), we addressed the public duty rule when the plaintiff, the only newspaper in Prowers County, sued the county clerk for refusing to publish a list of candidates before an election. The plaintiff relied upon a statute requiring the county clerk to publish such a list and alleged that it suffered monetary damages as a result of the clerk's refusal to publish the list. The plaintiff conceded that the statute imposed a public duty but argued that the statute also imposed a duty to the publishing company, which suffered a special injury by virtue of the clerk's failure to employ the newspaper's services. We rejected the plaintiff's contention and affirmed the trial court's dismissal of the action against the clerk, stating:

> The statute requiring the clerk to publish the list of nominations was clearly intended for the benefit of the public, and not for the benefit of newspapers. The benefit to the latter was only incidental. Certainly the law was not passed with the idea of benefiting publishers. So that the duty imposed was purely a public one. When the duty imposed upon an officer is one to the public only, its non-performance must be a public, and not an individual injury, and must be redressed in a public prosecution of some kind, if at all. 2 Cooley on Torts, (3d Ed.) 756.

54 Colo. at 544, 131 P. at 401. The court distinguished cases outside of Colorado holding public officials liable where the plaintiff had parted with consideration in reliance on an official's representation or where the duty of the official was for the benefit of an identifiable class of persons to which the plaintiff belonged. *Id.*

We subsequently held that the duty of a county to maintain its highways is a public duty, and that any breach of the duty is not actionable by a person who suffers damages as a result of negligent highway design and maintenance. *Richardson v. Belknap*, 73 Colo. 52, 213 P. 335 (1923). The court thus reaffirmed the public duty rule set forth in *Miller v. Ouray Electric Light & Power Co.* and *People v. Hoag*. In *Richardson*, the court added a new rationale for the rule, stating that since counties were not liable for tortious conduct, it would be inconsistent to impose liability on their officers.

More recently, we discussed the public duty rule in the context of a claim against the Industrial Commission by an individual who was injured when a machine in the plant where he was employed malfunctioned. *Quintano v. Industrial Commission*, 178 Colo. 131, 495 P.2d 1137 (1972). The plaintiff relied on a statute charging the Industrial Commission with the responsibility of inspecting factories to protect employees and guests against defective or dangerous machinery. After holding that the Industrial Commission was protected by sovereign immunity, we concluded that the commission members were not individually liable. The issue was whether "the statutory duty is public or is for the action-

able benefit of an individual." *Id.* at 135, 495 P.2d at 1138. We observed that the statutes in *Miller, Hoag,* and *Richardson*

> clearly imposed duties for the benefit of the public generally and not for that of particular individuals or classes. In contrast, the statute here under consideration specifically designates the classes of individuals for whose benefit it is intended, viz.: employees and guests. Under [the public duty rule] it might be said that this duty was created for the benefit of the petitioner and that, therefore, nonfeasance by the individual members of the commission subjects them to liability.

178 Colo. at 135, 495 P.2d at 1138–39. Relying on *Evans v. Board of County Commissioners,* 174 Colo. 97, 482 P.2d 968 (1971), we said that in the area of sovereign immunity, courts should not attempt to infer the General Assembly's intent as to whether a statute may be relied upon as a source of duty in a civil action for damages. Because the statute in question did not authorize a private cause of action for its violation, we upheld the trial court's dismissal of the complaint.

In refusing to resolve the case on the basis of the public duty rule, *Quintano* left the viability of the doctrine in this state in considerable doubt. Predictably, subsequent decisions by the court of appeals reached opposite conclusions as to the continued validity of the doctrine in Colorado. *Compare Gold Run, Ltd. v. Board of County Commissioners,* 38 Colo.App. 44, 554 P.2d 317 (1976) (affirming dismissal of action on the basis of public duty rule) *with*

*Martinez v. City of Lakewood,* 655 P.2d 1388 (Colo.App.1982) (reversing summary judgment that was premised upon the public duty rule). In *Martinez,* the court of appeals stated:

> [T]he concept of public duty, i.e., a general duty versus a special duty "is [merely] a function of municipal sovereign immunity and not a traditional negligence concept which has a meaning apart from the governmental setting. Accordingly, its efficacy is dependent on the continuing validity of the doctrine of sovereign immunity." *Commercial Carrier Corp. v. Indian River* [371 So.2d 1010 (Fla. 1979)]. The concept of a public duty cannot stand either with the enactment of the statute abrogating sovereign immunity, nor in instances where there is a common law duty of a public entity to the plaintiff. As noted in numerous opinions from various jurisdictions, application of the public duty—special duty dichotomy results in "a duty to none where there is a duty to all." *Stewart v. Schmieder,* 386 So.2d 1351 (La.1980); *Commercial Carrier Corp. v. Indian River,* [371 So.2d at 1010]; *Adams v. Alaska,* 555 P.2d 235 (Alaska 1976).

655 P.2d at 1390. In view of the trial court's reliance on the public duty rule in granting summary judgment in this case, and because of the conflicting decisions by the court of appeals in *Gold Run* and *Martinez,* we are squarely confronted with the question of whether the public duty rule is still good law in Colorado.[7]

---

**7.** In his special concurrence, Justice Rovira asserts that the validity of the public duty rule need not and should not be addressed in this case. He argues first that the issue was not properly identified when we granted certiorari and second that the issue was not briefed by the parties in this court. In granting certiorari, we phrased the duty issue in the broadest possible language: "Whether the defendants owed a duty to the plaintiffs and their decedents such that the defendants' failure to protect them is actionable." The public duty rule has been central to this case since the petitioners filed their motion for summary judgment in the trial court. In support of their motion, petitioners submitted a brief which fully discussed the public duty rule and argued that summary judgment should be

granted on that basis. Respondents, in turn, filed a brief in opposition to summary judgment, contending that the public duty rule was no longer good law. As we have noted, the trial court relied upon the public duty rule in granting summary judgment. *See supra* text pp. 154, 155.

Respondents appealed the trial court's ruling to the court of appeals, where they again argued that the public duty rule was an improper basis for granting summary judgment. Thus, although the trial court awarded summary judgment on the basis of the public duty rule and although that rationale was contested on appeal, the court of appeals inexplicably did not address the issue. Justice Rovira correctly points out that the public duty rule was not briefed in this

## 2. Abolition of the Public Duty Rule

The public duty rule is probably followed by the majority of courts. *See, e.g., Shore v. Town of Stonington,* 187 Conn. 147, 444 A.2d 1379 (1982); *Fryman v. JMK/Skewer, Inc.,* 137 Ill.App.3d 611, 92 Ill.Dec. 178, 484 N.E.2d 909 (1985); *Cox v. Department of Natural Resources,* 699 S.W.2d 443 (Mo. App.1985); *O'Connor v. City of New York,* 58 N.Y.2d 184, 447 N.E.2d 33, 460 N.Y.S.2d 485 (1983); *Barratt v. Burlingham,* — R.I. —, 492 A.2d 1219 (1985); *Chambers-Castanes v. King County,* 100 Wash.2d 275, 669 P.2d 451 (1983); Annot., *Modern Status of Rule Excusing Governmental Unit from Tort Liability on Theory that Only General, Not Particular, Duty was Owed Under Circumstances,* 38 A.L.R. 4th 1194 (1985). The two principal rationales offered in support of the doctrine are (1) protection against excessive governmental liability and (2) the need to prevent hindrance of the governing process. *J & B Development Co., Inc. v. King County,* 100 Wash.2d 299, 669 P.2d 468 (1983); *Miller v. Ouray Electric Light & Power Co.,* 18 Colo.App. at 131, 70 P. at 447. However, a growing number of courts have concluded that the underlying purposes of the public duty rule are better served by the application of conventional tort principles and the protection afforded by statutes governing sovereign immunity than by a rule that precludes a finding of an actionable duty on the basis of the defendant's status as a public entity. *Adams v. State,* 555 P.2d 235 (Alaska 1976); *Ryan v. State,* 134 Ariz. 308, 656 P.2d 597 (1982); *Commercial Carrier Corp. v. Indian River County,* 371 So.2d 1010 (Fla.1979); *Wilson v. Nepstad,* 282 N.W.2d 664 (Iowa 1979); *Schear v. Board of County Commissioners of Bernalillo County,* 101 N.M. 671, 687 P.2d 728 (1984); *Brennan v. Eugene,* 285 Or. 401, 591 P.2d 719 (1979); *Coffey v. Milwaukee,* 74 Wis.2d 526, 247 N.W.2d 132 (1976). Significantly, the rule has been repudiated by two courts whose earlier decisions are frequently cited in support of its continued validity. *See Ryan v. State,* 134 Ariz. at 308, 656 P.2d at 597 (overruling *Massengill v. Yuma,* 104 Ariz. 518, 456 P.2d 376 (1969)); *Commercial Carrier Corp. v. Indian River County,* 371 So.2d 1010 (Fla.1979) (overruling *Modlin v. City of Miami Beach,* 201 So.2d 70 (Fla.1967)). The public duty rule has also been condemned by commentators and by judges dissenting to opinions upholding the doctrine. *Chambers-Castanes,* 100 Wash.2d at 275, 669 P.2d at 451, 460 (Utter, J., concurring); *Hage v. Stade,* 304 N.W.2d 283, 288 (Minn.1981) (Scott, J., dissenting); *Riss v. City of New York,* 22 N.Y.2d 579, 293 N.Y.S.2d 897, 899, 240 N.E.2d 860, 861 (1968) (Keating, J., dissenting); *Motyka v. City of Amsterdam,* 15 N.Y.2d 134, 256 N.Y.S.2d 595, 598, 204 N.E.2d 635, 637 (1965) (Desmond, C.J., dissenting); 1A C. Antieau, *Municipal Corporation Law* § 11.74 (1986); Note, *State Tort Liability for Negligent Fire Inspection,* 13 Colum. J.L. & Soc. Probs. 303 (1977); Note, *Court of Claims Act,* 58 St. John's L.Rev. 199 (1983).

court. During oral argument, petitioners maintained, contrary to their position in the trial court, that the public duty rule was not at issue. In our view, however, it is necessary to address the public duty rule because it was the basis of the trial court's ruling and because it fell within the issue that was formulated for review on certiorari.

Judicial economy favors an immediate resolution of the issue which Justice Rovira would have us postpone until a later date. As we have pointed out, our last decision involving the public duty rule, *Quintano v. Industrial Commission,* 178 Colo. 131, 495 P.2d 1137 (1972), cast doubt on the viability of the doctrine in this state. Two court of appeals' decisions since *Quintano* have reached opposite conclusions regarding the continued validity of the rule. In this very case, the trial court expressed some hesitation in ordering summary judgment on the basis of the public duty rule. In view of the inroads on sovereign immunity and the attendant increase in the number of lawsuits against public officials and governmental entities, we believe that the bench and bar are entitled to clear guidance on an issue which has in the past substantially controlled litigation involving tort claims against public entities and their employees. We are persuaded that this case provides the appropriate factual and legal basis for abolishing the public duty rule and substituting the more conceptually satisfactory conventional tort analysis. *See infra* text p. 160.

Even where the rule still prevails, its scope has been substantially narrowed by the creation of significant exceptions. For example, the public duty rule cannot be used to avoid liability where a "special relationship" exists between the public entity and the plaintiff. *Campbell v. Bellevue*, 85 Wash.2d 1, 530 P.2d 234 (1975) (city electrical inspector knew of nonconforming underwater lighting system and of extreme danger to residence near stream but failed to disconnect the lighting system). Nor is the rule applicable where the tortious conduct of the public entity violated a statute or ordinance enacted for the benefit of the class of persons to which the plaintiff belonged. *Compare Irwin v. Town of Ware*, 392 Mass. 745, 467 N.E.2d 1292 (1984) (statutes created duty on the part of police officer to arrest intoxicated driver for the benefit of the motoring public) *with Dinsky v. Town of Framingham*, 386 Mass. 801, 438 N.E.2d 51 (1982) (building code did not create special duty to individual property owners upon which an action for negligent issuance of building permits could be predicated).

The major criticism leveled at the public duty rule is its harsh effect on plaintiffs who would be entitled to recover for their injuries but for the public status of the tortfeasor. A duty to all, it has been said, is a duty to none. *Commercial Carrier*, 371 So.2d at 1010; *Adams*, 555 P.2d at 235. Courts that have abandoned the rule have sometimes relied on provisions in statutes abrogating sovereign immunity stating that public entities are to be treated like private parties for purposes of determining liability. *E.g., Schear v. Board of County Commissioners of Bernalillo County*, 687 P.2d at 728. *Cf.* § 24–10–107, 10 C.R.S. (1982) ("Where sovereign immunity is abrogated as a defense under section 24–10–106, liability of the public entity shall be determined in the same manner as if the public entity were a private person."). In apparent contravention of these statutes, the public duty rule makes the public sta-tus of the defendant a crucial factor in determining liability. Courts rejecting the public duty rule reason that proof of one of the elements in an action for negligence should not be made more difficult simply because the defendant is a public entity.

It has also been argued that the same rationales that were used to justify absolute sovereign immunity—the financial impact on government and interference with governmental operations—are asserted in defense of the public duty rule. *Ryan*, 134 Ariz. at 308, 656 P.2d at 597; *Chambers-Castanes*, 100 Wash.2d at 275, 669 P.2d at 451, 460 (Utter, J., concurring). Those justifications were rejected with the abrogation of absolute sovereign immunity and should likewise be rejected as a policy basis for the public duty rule. The argument is particularly compelling if the public duty doctrine is seen as a function of sovereign immunity, rather than as an independent concept of negligence. *See Commercial Carrier*, 371 So.2d at 1010.

Perhaps the most persuasive reason for the abandonment of the public duty rule is that it creates needless confusion in the law and results in uneven and inequitable results in practice. *Ryan*, 134 Ariz. at 308; 656 P.2d at 597; *J & B Development Co., Inc. v. King County*, 100 Wash.2d 299, 669 P.2d 468, 474 (1983) (Utter, J. concurring); Note, *State Tort Liability for Negligent Fire Inspection*, 13 Colum.J.L. & Soc. Problems 303 (1977); Note, *Court of Claims Act*, 58 St. John's L.Rev. 199 (1983). As the Supreme Court of Arizona said in abandoning the public duty rule, "[w]e shall no longer engage in the speculative exercise of determining whether the tort-feasor has a general duty to the injured party, which spells no recovery, or if he had a specific individual duty which means recovery." *Ryan*, 656 P.2d at 597. Instead, the court stated, "the parameters of duty owed by the state will ordinarily be coextensive with those owed by others." *Id.*[8]

---

**8.** The Supreme Court of Washington has recently considered and rejected an attempt to discard the public duty doctrine. *Chambers-Castanes*, 100 Wash.2d at 275, 669 P.2d at 451. *See also J & B Development Co., Inc. v. King County*, 100 Wash.2d at 299, 669 P.2d at 468. In addition to

In our view, the problems associated with the public duty rule far outweigh the benefits of the rule, which are more properly realized by other means. The fear of excessive governmental liability is largely baseless in view of the fact that a plaintiff seeking damages for tortious conduct against a public entity must establish the existence of a duty using conventional tort principles, such as foreseeability, in the same manner as if the defendant were a private entity. *City of Kotzebue v. Mc-Lean*, 702 P.2d 1309 (Alaska 1985). Another hurdle the plaintiff must surmount in order to recover is proof of proximate cause. The traditional burdens of proof tied to tort law adequately limit governmental liability without resort to the artificial distinctions engendered by the public duty rule.

Nor do we believe that the abolition of the public duty rule will unduly interfere with governmental operations. By this decision, we create no new cause of action which would make a public official hesitant in the performance of his duties. Public officials will continue to enjoy qualified immunity. *See Trimble v. City and County of Denver*, 697 P.2d 716 (Colo.1985).

Finally, whether or not the public duty rule is a function of sovereign immunity, the effect of the rule is identical to that of sovereign immunity. Under both doctrines, the existence of liability depends entirely upon the public status of the defendant. The doctrine of sovereign immunity was abrogated in *Evans v. Board of County Commissioners*, 174 Colo. 97, 482 P.2d 968 (1971). Nothing in the provisions of the statutes dealing with governmental immunity, sections 24–10–101 to –118, 10 C.R.S. (1982 & 1985 Supp.), leads us to

conclude that the General Assembly intended to reintroduce a concept so closely related to absolute sovereign immunity. Quite the contrary, section 24–10–107 instructs courts to resolve the plaintiff's claim without regard to the public status of the defendant.

■ Accordingly, we reject the public duty rule in Colorado. Henceforth, for purposes of determining liability in a negligence action, the duty of a public entity shall be determined in the same manner as if it were a private party.

### B.

### *Duty of the Commerce City Police Officers*

Having discarded the concept that the existence and extent of the police officers' duty is dependent on status, we now analyze the duty question by applying conventional tort principles.

### 1. *The Special Relation Rule*

■ Where a person should reasonably foresee that his act, or failure to act, will involve an unreasonable risk of harm to another, there is a duty to avoid such harm. *Metropolitan Gas Repair Service, Inc. v. Kulik*, 621 P.2d 313 (Colo.1981); *Mile High Fence Co. v. Radovich*, 175 Colo. 537, 489 P.2d 308 (Colo.1971). However, there is no duty to prevent a third person from harming another, absent a special relation between the actor and the wrongdoer or between the actor and the victim. Restatement (Second) of Torts § 315 (1965).

Here, the Commerce City police officers were summoned to a party of teenagers where alcoholic beverages were being

---

the traditional rationales underlying the public duty doctrine, the Washington court discussed the use of the rule as a focusing device to determine whether a duty is owed to a specific individual or merely to the public at large. *Id.* The public duty rule serves to avoid the conclusion that every duty owed to the public is a duty to the individual members of the public. The court rejected the contention that the public duty doctrine is merely a function of sovereign immunity and declared that the abrogation of

sovereign immunity was not intended to create new claims for relief.

We are unpersuaded that the public duty rule is necessary as a focusing device. The existence of an actionable duty can, in our view, be more effectively determined by resort to the familiar principles of foreseeability and by balancing the social utility of the defendant's conduct against the risk of harm resulting from such conduct. *See infra* text p. 160.

served. Ralph Crowe was handcuffed after he attempted to interfere with the officers' efforts to disperse the group attending the party. The officers in this case did not release an intoxicated person knowing that he would thereafter operate an automobile. Instead, the officers permitted Ralph Crowe's younger brother, Eddie Crowe, who appeared sober, to drive Ralph Crowe home.

While the officers obviously had a duty to prevent Ralph Crowe from harming others while he was handcuffed at the party, *see* Restatement (Second) of Torts § 319 (1965) (duty of those in charge of person having dangerous propensities), the officers discharged their duty by restraining Crowe until he calmed down. The officers' duty, as it related to the conduct of Ralph Crowe, began and ended at the party. It did not extend to the period after Ralph Crowe was released to his younger brother, who assured the officers that he would drive Ralph Crowe home.[9] The officers did not assume a duty to the respondents' decedents, induce reliance, or create a peril or change the nature of an already existing risk. *See Jackson v. Clements*, 146 Cal. App.3d 983, 194 Cal.Rptr. 553 (1983).[10]

In support of their contention that a special relationship existed between the Commerce City police officers and the respon-

dents' decedents, respondents cite *Irwin v. Ware*, 392 Mass. 745, 467 N.E.2d 1292 (1984). In *Irwin*, police officers stopped a car suspecting that the driver was intoxicated. Plaintiffs alleged that the officers negligently failed to arrest the driver, and that plaintiffs were entitled to recover for injuries sustained when the driver collided with the plaintiffs' car after he was released by the police. The Supreme Judicial Court of Massachusetts held that "there is a special relationship between a police officer who negligently fails to remove an intoxicated motorist from the highway, and a member of the public who suffers injury as a result of that failure." 467 N.E.2d at 1303-04. *Contra Harris v. Smith*, 157 Cal.App.3d 100, 203 Cal.Rptr. 541 (1984). In finding a special relationship, the court relied on Massachusetts statutes relating to a police officer's authority to arrest intoxicated persons operating automobiles. The court determined that the statutes indicated a legislative intent to protect intoxicated persons and other members of the motoring public and concluded that the foreseeable consequences of releasing an intoxicated driver were all too obvious.

Quite apart from the question of whether this court would recognize a special relationship under the circumstances of *Irwin v. Ware*, the case is readily distinguishable

---

**9.** The record also reflects that Ralph Crowe promised the officers that he would allow his brother to take him home.

**10.** In *Jackson v. Clements*, police officers investigated a party where alcoholic beverages were being served to minors. Although the officers knew that two of the minors were intoxicated and that each intended to drive, the officers failed to prevent the minors from driving. The plaintiffs, heirs and parents of three persons who were killed when the two minors were involved in a collision after leaving the party, sued the police officers and their employer, the county. The complaints asserted that, once the officers undertook to investigate the party and observed that the minors were intoxicated, the officers had a duty to prevent the minors from driving. Plaintiffs contended that a special relationship was created between the officers and the minors when the minors acted in a manner suggesting that they were too intoxicated to drive, which was evidenced by the detention of

one minor. The trial court dismissed the complaints, and the court of appeal affirmed. Distinguishing prior cases that found a special relationship between state personnel and a wrongdoer, the court of appeal stated that in the instant case there was no allegation of an ongoing custodial relationship between the officers and the intoxicated minors. Accordingly, the court concluded that a special relationship did not exist between the police officers and the minors. The court then considered and rejected plaintiffs' contention that a special relationship existed between the officers and one of the victims, who was a passenger in one minor's car at the time of the collision. The court said that such a relationship could not be found because the police (1) did not voluntarily assume a duty of care toward the injured parties, (2) did not induce the victims to rely on a promise that the police would protect them, and (3) did not create the peril or change the nature of an existing risk against which the victims relied upon the police for protection.

from this case. Here, the Commerce City police officers did not contact Ralph Crowe while he was driving an automobile. During their entire encounter with Ralph Crowe, the officers had no reason to believe that he had been driving under the influence of alcohol or that he intended to do so in the immediate future. In fact, the officers released Ralph Crowe to his younger brother only after receiving assurances from both men that Eddie Crowe would drive Ralph Crowe home. The potential harm resulting from the release of Ralph Crowe was far less foreseeable than the release of the intoxicated driver in *Irwin v. Ware.*

### 2. The Emergency Commitment Statute

Respondents rely on section 25–1–310(1), 11 C.R.S. (1982), as a source of the officers' duty in this case. The statute provides:

> *Emergency commitment.* (1) When any person is intoxicated or incapacitated by alcohol and clearly dangerous to the health and safety of himself or others, such person shall be taken into protective custody by law enforcement authorities or an emergency service patrol, acting with probable cause, and placed in an approved treatment facility. If no such facilities are available, he may be detained in an emergency medical facility or jail, but only for so long as may be necessary to prevent injury to himself or others or to prevent a breach of the peace. A law enforcement officer or emergency service patrolman, in detaining the person, is taking him into protective custody. In so doing, the detaining officer may protect himself by reasonable methods but shall make every reasonable effort to protect the detainee's health and safety. A taking into protective custody under this section is not an arrest, and no entry or other record shall be made to indicate that the person has been arrested or charged with a crime. Law enforcement or emergency service personnel who act in compliance with this section are acting in the course of their official duties and are not criminally or civilly liable therefor. Nothing in this subsection (1) shall preclude an intoxicated or incapacitated person who is not dangerous to the health and safety of himself or others from being assisted to his home or like location by the law enforcement officer or emergency service patrolmen.

*Id.* Respondents contend that under section 25–1–310(1), the Commerce City police officers had a duty to take Ralph Crowe into "protective custody" or to escort him to his home. The respondents claim the officers were guilty of a breach of duty in releasing Ralph Crowe to his younger brother.

■ A duty of care may be created by legislative enactment. *Dare v. Sobule,* 674 P.2d 960 (Colo.1984). However, the breach of a statutory duty is actionable only by one who is a member of the class the statute was designed to protect, and only where the injury suffered by such person is the type of injury which the statute was enacted to prevent.

■ Section 25–1–310(1) was enacted as part of a comprehensive legislative scheme dealing with alcoholism and intoxication treatment. *See* §§ 25–1–301 to –316, 11 C.R.S. (1982). The legislative declaration preceding the statutory scheme states:

> (1) It is the policy of this state that alcoholics and intoxicated persons may not be subjected to criminal prosecution because of their consumption of alcoholic beverages but rather should be afforded a continuum of treatment in order that they may lead normal lives as productive members of society. The general assembly hereby finds and declares that alcoholism and intoxication are matters of statewide concern.

§ 25–1–301(1). We recognize that a cursory reading of the emergency commitment statute may suggest that the statute was intended to protect members of the public against intoxicated persons who appear "clearly dangerous." However, in our view, the General Assembly did not intend to create a claim for relief against police officers who, in their discretion, release an

intoxicated person into the "custody" of an apparently sober and responsible relative.

Since we conclude that the respondents' decedents were not included within the class of persons that section 25–1–310(1) was designed to protect, the respondents may not rely on the statute as a source of the officers' duty in this case.

The respondents in this case have failed to establish that a duty was owed to their decedents by the Commerce City police officers. Therefore, they have not established a prima facie case of negligence. Although the trial court granted summary judgment on the basis of the public duty rule, which we have repudiated in this decision, the order of summary judgment was proper since respondents failed to establish a legally cognizable duty. Accordingly, the court of appeals erred in vacating the trial court's order of summary judgment.

Our conclusion that the Commerce City police officers did not owe a duty to respondents' decedents under the facts of this case is the basis for our decision reversing the court of appeals. However, it is necessary to address the issue of immunity because the court of appeals erroneously narrowed the scope of official immunity afforded police officers.

### III.

### IMMUNITY

■ A public official performing discretionary acts within the scope of his office enjoys qualified immunity. *Trimble v. City and County of Denver,* 697 P.2d 716 (Colo.1985). He is protected against civil liability if his conduct is not willful, malicious or intended to cause harm. *Id.* The court of appeals held that the Commerce City police officers were not protected by official immunity because the decision to take Ralph Crowe into custody was not discretionary. We disagree.

The court of appeals relied on *Irwin v. Ware,* 392 Mass. 745, 467 N.E.2d 1292 (1984). We have already determined that *Irwin* is inapposite for purposes of determining the duty of the Commerce City po-

lice officers in this case. *Irwin* is also unpersuasive authority for the conclusion that the officers were not shielded from civil damages by official immunity.

In *Irwin,* the court held that the decision of a police officer to arrest a driver he knows or reasonably should know is intoxicated is not a discretionary act. The court said:

> No reasonable basis exists for arguing that a police officer is making a policy or planning judgment in deciding whether to remove from the roadways a driver who he knows is intoxicated. Rather, the policy and planning decision to remove such drivers has already been made by the Legislature.

*Id.* at 467 N.E.2d 1299. Relying on *Irwin,* the court of appeals concluded: "The same reasoning applies to a decision by a police officer to release a disputatious, intoxicated person from custody, and to send that person onto the roadway under the ostensible supervision of a younger brother as caretaker." *Cain v. Leake,* 695 P.2d at 800–01.

This case does not involve the question of whether a police officer's decision to arrest a person suspected of driving under the influence of alcohol is a discretionary decision. Although we express no opinion on the issue, we note that at least one other court has taken a position contrary to *Irwin v. Ware. See Everton v. Willard,* 468 So.2d 936 (Fla.1985) (the decision to arrest is a basic judgmental or discretionary governmental function that is immune from suit).

■ Assuming that an officer's decision to arrest an intoxicated driver is not a discretionary decision, it hardly follows that the decision whether to take an intoxicated person into protective custody under the emergency commitment statute is a nondiscretionary judgment. A person who operates an automobile under the influence of alcohol violates section 42–4–1202, 17 C.R.S. (1984). When a police officer stops a person he knows, or reasonably should know, is driving under the influence, the

officer arguably has no discretion but to arrest the suspect. By contrast, an officer who encounters an intoxicated person who is not driving has no authority to take such person into protective custody under section 25–1–310(1) unless the officer has probable cause to believe that the intoxicated person is "clearly dangerous to the health and safety of himself or others." § 25–1–310(1). While it may be said under *Irwin v. Ware* that the General Assembly has determined as a policy matter that an intoxicated driver is a public danger, and that an officer encountering such a person accordingly has no choice in determining whether to arrest or release the person, the same is not true with respect to the emergency commitment statute. Under section 25–1–310(1), it is the *officer* who must determine whether the intoxicated person is clearly dangerous. The General Assembly plainly did not intend for the police to take into protective custody every intoxicated person they meet. Instead, the General Assembly designated a specific class of intoxicated persons who are subject to emergency commitment and left the determination of whether a particular individual is clearly dangerous to the police. Accordingly, the decision to take a person into protective custody is discretionary and protected by official immunity.

Respondents have also asserted that since the officers did not take Ralph Crowe into protective custody, the officers should have at least escorted him to his home. Section 25–1–310(1) states: "Nothing in this subsection (1) shall preclude an intoxicated or incapacitated person who is not dangerous to the health and safety of himself or others from being assisted to his home or like location by the law enforcement officer or emergency service patrolman." Whether the officers should have taken the action suggested by respondents was a discretionary judgment. Therefore, the decision by the Commerce City police

officers not to assist Ralph Crowe to his home is protected by official immunity.

Accordingly, we reverse the court of appeals and remand to the court of appeals with directions to reinstate the trial court's order granting summary judgment to petitioners.

ROVIRA, J., specially concurs.

ROVIRA, Justice, specially concurring:

I agree with the majority's conclusions, that respondents' claims against the Commerce City police officers fail on conventional tort principles and that the decision by the officers not to take Ralph Crowe into custody or assist him home is protected by official immunity. However, I disagree with the conclusion that "we are squarely confronted with the question of whether the public duty rule is still good law in Colorado," majority op. at 157, and therefore do not join in part II A of the majority opinion.

Since respondents' claims fail under traditional tort analysis, I see no need to address the public duty issue in this case. As the majority points out, the public duty issue was not addressed by the court of appeals. Majority op. at 154. Moreover, the issue upon which certiorari was granted relating to petitioners' duty to respondents did not specifically raise the public duty question. In granting certiorari we asked the parties to address: "Whether the defendants owed a duty to plaintiffs and their decedents such that the defendants' failure to protect them is actionable." Both parties responded by presenting traditional tort duty arguments, and neither addressed the public duty issue.

In my view, the court should not decide an issue of considerable public importance, such as the abolition of the public duty rule, which was not briefed and is not necessary for resolution of the case at bar.[1] As the majority points out, the public duty rule is controversial; and while there may

---

**1.** Neither of the parties cited any of the cases discussed by the majority in part II A 1, The Public Duty Doctrine. This clearly reflects their lack of understanding that the public duty rule

was to be considered due to the failure of the court to frame the certiorari issue in a manner which would result in a discussion by the parties of the public duty doctrine.

be a trend towards abolition of the rule, majority op. at 158, the majority of states probably still adhere to the rule, majority op. at 158. Without the benefit of briefs by the parties and interested *amici*, the court is in a poor position to determine whether the public duty rule has force and content independent of the doctrine of sovereign immunity. A determination of the continuing vitality of the rule would be better left for a later day.

Finally, I note that to the extent that the public duty rule is either a function of sovereign immunity or identical in effect to sovereign immunity, *see* majority op. at 160, the legislature clearly has the power to reimpose the public duty rule in statutory form. "If the General Assembly wishes to restore sovereign immunity and governmental immunity in whole or in part, it has the authority to do so." *Evans v. Board of County Commissioners*, 174 Colo. 97, 105, 482 P.2d 968, 972 (1971).