**Vendria PERREIRA, Surviving Spouse of Augustus J. Perreira, Jr., (Deceased), Plaintiff-Appellee and Cross-Appellant,**

v.

**The STATE of Colorado and Its Agency, Fort Logan Mental Health Center, and Eric Anders, M.D., Defendants-Appellants and Cross-Appellees.**

No. 84CA0402.

Colorado Court of Appeals,
Div. III.

Oct. 9, 1986.

Rehearing Denied Jan. 15, 1987.

Certiorari Granted (Perreira)
June 8, 1987.

Dean P. Grossenbach, Richard K. Walsh, Charles W. Hemphill, Colorado Springs, for plaintiff-appellee and cross-appellant.

Hall & Evans, Alan Epstein, Carol M. Welch, William James Barber, Denver, for defendants-appellants and cross-appellees.

KELLY, Judge.

The defendants, State of Colorado and its agents, Fort Logan Mental Health Center and Eric Anders, M.D. (the State), appeal from the judgment entered on a jury ver-

dict for the plaintiff, Vendria Perreira, finding the defendants liable for the wrongful death of plaintiff's husband, a Colorado Springs police officer who was shot and killed by a mentally ill man, Seth Andrew Buckmaster, Jr. The State argues, among other things, that it owed no duty to Officer Perreira when it discharged Buckmaster from custody at the Fort Logan Mental Health Center some four months before the killing. We agree and therefore reverse.

During the years before the homicide of Officer Perreira, Buckmaster had been involuntarily committed to the Fort Logan Mental Health Center on several prior occasions under the 72–hour hold-and-treat provisions of § 27–10–105, C.R.S. In each of those instances, medical staff at the Center diagnosed Buckmaster as mentally ill; however, he did not remain at the Center voluntarily, nor did the medical staff certify him as requiring extended involuntary confinement under § 27–10–107, C.R.S.

Buckmaster was committed again in October 1979, and on that occasion, defendant Anders did certify Buckmaster as requiring short term involuntary confinement and treatment for up to three months. His condition had markedly deteriorated, and he appeared to be either gravely disabled, or a danger to others or to himself.

In December 1979, Dr. Anders and other psychotherapists decided that Buckmaster had improved and was no longer certifiable under § 27–10–107, C.R.S. Dr. Anders then discharged Buckmaster from confinement under § 27–10–110, C.R.S., after Buckmaster refused to remain at the Center voluntarily.

In April 1980, Buckmaster created a disturbance in a Colorado Springs convenience store and refused to leave when asked to do so by a clerk. The clerk then flagged down Officer Perreira and requested his assistance. The officer entered the store, spoke with Buckmaster, then escorted him into the store parking lot. Moments later, Buckmaster killed Officer Perreira without warning.

Plaintiff sued the defendants alleging that the State was negligent in treating and releasing Buckmaster and that this negligence was the proximate cause of Officer Perreira's death. The trial court found that the State owed Officer Perreira a duty as a matter of law and submitted the case to the jury.

The State argues that: The available evidence did not indicate Buckmaster was a threat to others; Officer Perreira was not a foreseeable victim; and the State had no duty to control Buckmaster's conduct. The State contends that the "special relation" rule of Restatement (Second) of Torts § 315 (1965) operates to relieve it of a legal duty to Officer Perreira as a matter of law. We agree.

The existence and scope of a legal duty to a particular plaintiff is a question to be determined by the trial court as a matter of law. *Metropolitan Gas Repair Service, Inc. v. Kulik*, 621 P.2d 313 (Colo. 1980). A party has a duty to avoid an unreasonable risk of harm to another if he can reasonably foresee that his acts or omissions will cause such harm. *Leake v. Cain*, 720 P.2d 152 (Colo.1986). There is no duty, however, to prevent a third person from harming another unless a special relation exists "between the actor and the wrongdoer or between the actor and the victim." *Leake v. Cain, supra. See* Restatement (Second) of Torts § 315 (1965).

Medical professionals involved in the care and treatment of a mentally ill patient have a legal duty under the "special relation" rule to prevent the patient from harming himself or others only if the patient in their care constitutes a danger to himself or to the safety of others. Section 27–10–101, et seq., C.R.S. This danger may be shown by evidence of injurious acts, attempts, or threats by the patient. *People v. Taylor*, 618 P.2d 1127 (Colo. 1980).

Public entities which have taken an individual into custody have a duty to prevent such person from harming others while in custody. *See Leake v. Cain, supra* (Police officers' duty existed while intoxicated individual was in their custody). *See also* Restatement (Second) of Torts

§ 319 (1965) (Duty of those in charge of person having dangerous propensities). A psychotherapist treating a mental patient as an outpatient may also fall under the special relation rule. *Brady v. Hopper*, 751 F.2d 329 (10th Cir.1984).

The existence of a special relationship alone, however, does not create a duty on the part of a psychotherapist. On the contrary, a legal duty on the part of the psychotherapist exists only if the victim is within the foreseeable zone of danger. *See Tarasoff v. Regents of University of California*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (Cal.1976). Thus, a psychotherapist has a duty to potential victims of his patient if the psychotherapist knew or ought to have known that the patient was a danger to others. *McIntosh v. Milano*, 168 N.J.Super. 466, 403 A.2d 500 (N.J.Super. Ct.Law Div.1979). Nevertheless, a psychotherapist has no legal duty to third persons under the special relation rule unless the patient made specific threats against specific individuals. *Brady v. Hopper, supra. Accord Thompson v. County of Alameda*, 27 Cal.3d 741, 167 Cal.Rptr. 70, 614 P.2d 728 (Cal.1980) (no identifiable victim, so no duty even though wrongdoer made threats to kill someone if he were released from custody).

Here, the record establishes that a special relationship existed between Anders and Buckmaster because of the care and treatment provided to Buckmaster under § 27–10–101, et seq., C.R.S. The record also establishes that the State exercised its discretionary powers in releasing Buckmaster in December 1979. However, the record is insufficient to support a conclusion that Anders or the State owed a duty to Officer Perreira relative to the release of Buckmaster.

Buckmaster had told his psychotherapists that, except for a fight with his father, he had not threatened violence against anyone. Also, although Buckmaster had had numerous confrontations with police in the Denver area, his only "threat" against the police was to proceed against them in court for what he perceived to be harassment.

Further, although Buckmaster owned a gun and this was known to Anders, there is no evidence that he made any threats to use it against the police or anyone else. Nor was there any evidence that Buckmaster had ever had any contact with the Colorado Springs police and, specifically, not with Officer Perreira.

Hence, because of the paucity of evidence that Buckmaster had ever uttered any specific threats against specific victims, we hold that the trial court erred in finding that the State had a legal duty to Officer Perreira and his survivors. Hence, the case should not have been submitted to the jury, and its verdict cannot stand.

In view of the conclusions we have reached, it is not necessary to consider the other assignments of error or the cross-appeal.

The judgment is reversed, and the cause is remanded to the trial court with directions to dismiss the complaint for failure to state a cause of action.

VAN CISE and METZGER, JJ., concur.