Alana MONTOYA and Kyle Montoya, By and Through their parent and next friend, Paul A. MONTOYA, and Paul A. Montoya, Plaintiffs–Appellants,

v.

Barbara BEBENSEE and Laurence C. Smith, Jr., Defendants–Appellees.

No. 86CA0823.

Colorado Court of Appeals, Div. I.

Aug. 18, 1988.

John S. Retrum, Lakewood, for plaintiffs-appellants.

John A. Wilson, Lakewood, for defendant-appellee Barbara Bebensee.

Jana Purdy, Aurora, for defendant-appellee Laurence C. Smith, Jr.

CRISWELL, Judge.

Plaintiffs, Paul Montoya (father) and his two minor children, appeal the trial court's dismissal of their complaint against Lawrence C. Smith, Jr., a licensed psychologist, and Barbara Bebensee, his unlicensed associate. We affirm in part and reverse in part.

In March 1984, a decree of dissolution was entered, terminating the marriage between father and the children's mother. Custody of the two children was awarded to the mother, but father was granted liberal visitation rights.

The complaint filed with the trial court was based upon the actions undertaken by Bebensee during her counseling with one of the children and with their mother following the entry of the dissolution decree. While these counseling sessions were in progress, Bebensee reported to county officials that father's minor daughter claimed that father had sexually abused her. Bebensee also advised the ex-wife to restrict father's right of visitation with the two children. Later, she testified as an expert witness on the mother's behalf in a dissolution of marriage hearing devoted to a consideration of father's visitation rights.

Father and the minor children sought both compensatory and punitive damages, under several legal theories. They asserted, alternatively, that Bebensee's actions were negligent, were undertaken willfully, wantonly, and in reckless disregard of plaintiffs' rights and feelings, and constituted outrageous conduct that intentionally or negligently inflicted emotional distress upon them. Smith's liability was predicated either upon the doctrine of respondeat superior or upon his affirmative negligence in improperly supervising Bebensee.

Defendants' motion to dismiss alleged, among other things, that, in light of the prerogatives accorded a custodial parent by § 14-10-130, C.R.S. (1987 Repl.Vol. 6B), father, who was not the custodial parent, had no standing to maintain any action on behalf of the minor children, and that Bebensee is immune from liability for making a report of child abuse "in good faith" in accordance with § 19-10-110, C.R.S. (1986 Repl.Vol. 8B).

Father's evidence submitted in opposition to defendants' motion reflected the following:

In June 1984, the mother reported to Jefferson County Department of Social Services (DSS) that father had sexually abused his daughter, age 4, during a visit. A DSS social worker interviewed the child and informed the mother that she was uncertain whether the events described by the child had "really happened." The mother also took the child to the family physician and later reported that this physician, likewise, found no physical evidence of any sexual abuse.

The social worker interviewed father, who strenuously denied any conduct of an abusive or sexual nature. The social worker elected to close the case and advised mother that there was no basis upon which a recommendation to cease or restrict visitation rights with father could be made.

The mother insisted, however, that visitation should cease. She engaged defendant Bebensee for the purpose of rendering an opinion whether father had sexually abused the child and for therapy for the child.

Bebensee initially observed the child twice for short periods. She did not administer any psychological tests to the child. Based upon a method of analysis that she termed "the technique of the non-verbal," i.e., the child's body language, she concluded that father had sexually abused his daughter. Bebensee then advised the mother to limit father's visits with the children to one hour per week. Despite provisions of the court order granting liberal, unsupervised visitation, the mother, relying upon Bebensee's instructions, unilaterally reduced father's visitation rights as suggested.

When father learned of Bebensee's opinion and of her advice to restrict his visitation rights, he telephoned her and requested that she interview him. She refused to do so.

Bebensee reported to the DSS social worker the events related to her by the child. The social worker told Bebensee that the events the child had described to Bebensee were not consistent with the events the child had described to her. Nonetheless, Bebensee filed a report of suspected child abuse with the county.

Shortly thereafter, Bebensee referred the child to another psychologist for a second opinion. After interviewing the mother and child together, this professional reported to Bebensee that he entertained serious doubts about the child's allegations. Bebensee, however, characterized this opinion as "irrelevant" and "not helpful."

In July 1984, father instituted a contempt proceeding against the mother for her restriction of his visitation rights. The mother responded by filing a motion for termination or modification of visitation. Pending a hearing on these motions, the court ordered both parties to select another psychologist for the purpose of evaluating the family. This therapist observed the family's interactions, separately and as a group, administered psychological tests, and concluded that there were serious doubts concerning the child's veracity.

A hearing was held in the dissolution court in January 1985. Bebensee appeared as an expert witness on mother's behalf and testified that there was "no doubt" in her mind that father had sexually abused his daughter. The court dismissed the contempt citation, denied mother's motion to terminate visitation, and ultimately fully restored father's visitation rights.

An affidavit from the psychologist previously selected by father and the mother in accordance with the order of the dissolution court asserted that this therapist had "concerns" about Bebensee's actions, because (1) contrary to Bebensee's claim, there is no support in the literature for the assertion that a child's body language can provide an infallible indication as to a child's veracity; (2) in this case, psychological testing of the child disclosed that she so confused fantasy with reality that she could report fantasy as fact and use appropriate body language in doing so; (3) any counselor must always be aware of her own "prejudices" and take steps to assure that they were not influencing her opinion; and (4) Bebensee did not undertake steps to assure that her personal prejudices did not influence her opinion in this case.

In this affidavit, it was also noted that Bebensee did not give any psychological tests to the child and made no investigation of the reports made by the child to other parties so as to determine whether they were consistent or inconsistent with the statements made to her. Finally, this affidavit averred that Bebensee was not "sufficiently careful of the rights" of the father, because she diagnosed him as a child abuser while refusing to speak with him; she disregarded the reports of other professionals; and she advised the mother to

limit his visitation rights, even in the face of a court order.

In dismissing plaintiffs' complaint, the trial court apparently treated defendants' motion as one for summary judgment. *See* C.R.C.P. 12(b). It concluded that father had no standing to sue as parent and next friend for the minor children; that defendants had no duty of due care with respect to father and, therefore, father could not assert a claim based upon negligence; that "diagnosis, treatment, counseling and rendering an expert opinion does not rise to the level of outrageous conduct"; and that Bebensee's actions in reporting a suspected case of child abuse could not constitute negligent or intentional infliction of emotional distress. Thus, it dismissed plaintiffs' complaint in its entirety and, finding that the claims asserted lacked substantial justification under § 13–17–102, C.R.S. (1987 Repl.Vol. 6A), awarded defendants the attorney fees incurred by them in their defense of the action.

## I. *The Children's Claims*

■ Plaintiffs first contend that the trial court erred in ruling that father, the children's non-custodial parent, lacked capacity to bring suit as a parent and next friend on behalf of the children. We find no error.

Under § 14–10–130(1), C.R.S. (1987 Repl. Vol. 6B), the custodial parent is granted full authority "to determine the child's upbringing," unless after hearing, the court finds that, in the absence of a specific limitation upon the custodian's authority, the child's physical health will be endangered or his emotional development significantly impaired. *See generally Rhoades v. Rhoades*, 188 Colo. 423, 535 P.2d 1122 (1975); *In re Marriage of Lampton*, 677 P.2d 352 (Colo.App.1983), *aff'd in part*, 704 P.2d 847 (Colo.1985). We hold that, included within the purview of this statute, is the question whether to permit a child to initiate litigation.

The mother, the custodial parent, disclosed that she had no knowledge of this action until after Bebensee was served with process. Further, she believed that Bebensee had provided services in a proper and professional manner and she did not want the children to sue Bebensee. The record also shows that father failed to seek the requisite determination by the court pursuant to § 14–10–130, C.R.S. (1987 Repl. Vol. 6B). Thus, father, the non-custodial parent, lacked capacity to act as next friend for the children, and the trial court did not err in dismissing the claims brought by him on their behalf. That dismissal, however, should be without prejudice, so that none of the children's rights are affected by such dismissal.

## II. *Father's Claims*

### A. Negligence and Negligent Infliction of Emotional Suffering by Bebensee

#### 1. *The Duty Owed*

■ Father asserts that the trial court erred in dismissing all his claims based on Bebensee's negligence after concluding that defendants owed him no duty of due care. We agree.

It is to be noted that father's claims of negligence here are not based upon the actions of a third party who was being treated by defendants. *See Perreira v. State*, 738 P.2d 4 (Colo.App.1986) (*cert. granted*, June 8, 1987.)

Here, the question is whether a mental health provider owes a duty to refrain from taking actions of her own that may foreseeably result in injury to another. That question must be resolved by:

"consideration of many factors including, for example, the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the actor." *Smith v. Denver*, 726 P.2d 1125 (Colo.1986).

We conclude that Bebensee owed a duty of due care to father in this case. We reach this conclusion after considering both the great social utility of having therapists make reports of suspected child abuse and the significant risk of substantial injury that may occur to one who is falsely accused of being a child abuser. Certainly, the harm that may result from negligent false accusations is readily foreseeable,

while the burden of due care placed upon therapists is no greater than the duty that substantially all professionals are required to meet. Thus, a mental health care provider owes a duty to any person, who is the subject of any public report or other adverse recommendation by that provider, to use due care in formulating any opinion upon which such a report or recommendation is based.

### 2. *The Statutory Immunity*

Having reached the conclusion that a mental health care provider owes a duty of due care to a third party under some circumstances, however, we also conclude that, in at least one instance, the general assembly has immunized such persons from liability for actions that would otherwise constitute a breach of the duty that we have here found to exist.

Section 19–10–104, C.R.S. (1986 Repl.Vol. 8B) requires any mental health professional who has "reasonable cause to know or suspect" that a child has been abused to report such fact to the appropriate county authorities. Section 19–10–110, C.R.S. (1986 Repl. Vol. 8B), provides that any person making such a report, or testifying in a proceeding conducted under the Children's Code, or otherwise acting pursuant to the child abuse article of that code, is immune from "any liability, civil or criminal" that "otherwise might result," providing such actions are undertaken "in good faith."

Thus, where the statutory immunity defense is raised, no liability can be predicated upon any person's reporting of suspected child abuse under the statute so long as good faith is exercised. Here, the negligence claim asserted did not allege that Bebensee's act of reporting to the county was accompanied by bad faith. In the face of defense allegations that Bebensee exercised good faith, therefore, no claim could be grounded upon Bebensee's alleged negligence in making a child abuse report, or in taking other actions pursuant to the statute, absent allegations of bad faith. This is so, not because Bebensee did not owe a duty of due care to father, but because the statute, by its language concerning reports made in good faith, prohibits negligence alone from forming the basis for such a claim.

█ At the same time, father's claims for negligence were also grounded upon other actions taken by Bebensee that did not fall within the ambit of her statutory immunity. For example, nothing within § 19–10–110 would grant immunity from liability based upon Bebensee's negligence in counseling the mother to deny to father the visitation rights granted to him by the previous court order. In addition, the evidence as presented at trial may establish that Bebensee undertook other actions which caused father injury and which resulted from her negligence, but which were not protected under § 19–10–110. To this extent, therefore, father's claims for negligence and negligent infliction of emotional distress could not be dismissed in their entirety.

### B. Outrageous Conduct and Intentional Infliction of Emotional Suffering by Bebensee

█ In addition to alleging that Bebensee's actions were negligent, father also alleged in separate claims that she acted willfully and in wanton and reckless disregard of his rights and feelings. While these allegations were general in nature, they were sufficient, in our view, to constitute an allegation that Bebensee's actions were not undertaken in good faith. Thus, these allegations were sufficient on their face to assert a claim against Bebensee to which the statutory immunity for making a report of child abuse would not apply.

In support of their motion to dismiss the complaint, defendants presented no evidentiary materials to the court, relying, instead, upon the statutory rebuttable presumption that Bebensee's actions were undertaken in good faith. *See* § 19–10–110, C.R.S. (1986 Repl.Vol. 8B). In contrast, as we described above, father referred the court to various transcripts, depositions taken in other cases, and an affidavit from the mental health professional that both father and the mother agreed to use in the dissolution court proceedings.

In resolving the question of the existence of good faith, a reference to all underlying circumstances must be made. Proof of such state of mind involves a consideration of circumstantial evidence and of the reasonable inferences to be drawn therefrom. Thus, such an issue seldom can be resolved on a motion for summary judgment. *Hatfield v. Barnes*, 115 Colo. 30, 168 P.2d 552 (1946). Moreover, if a plaintiff's pleadings and affidavits assert facts which, if true, would rebut the statutory presumption of good faith under § 19–10–110, summary judgment is improper. *Martin v. Weld County*, 43 Colo.App. 59, 598 P.2d 532 (1979).

We do not agree with the trial court's conclusion that a mental health provider's diagnosis, treatment, and rendering of an expert opinion respecting the existence of child abuse cannot give rise to an outrageous conduct claim under *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753 (1970). If such a provider's actions are not undertaken in good faith, the statute's immunity is withdrawn, in which event there is no reason to judge that provider by a standard of conduct different from that standard to which all other members of society are subject. *See Martin v. Weld County, supra.*

Our review of the record here, conducted in light of these considerations, leads us to conclude that the evidentiary showing made by father was sufficient to withstand the defendants' motion to dismiss. In our view, that evidence raised a genuine question as to whether Bebensee's actions would lead an average member of the community to consider them to be outrageous. *See Rugg v. McCarty, supra.* Thus, the trial court erred in dismissing father's claims based upon the torts of outrageous conduct and intentional infliction of emotional suffering.

In reaching this conclusion, we do not address the question whether any liability may be predicated upon Bebensee's actions in testifying before the dissolution court. *See McDonald v. Lakewood Country Club*, 170 Colo. 355, 461 P.2d 437 (1969). That issue should be addressed by the trial court once a detailed factual record is made by the parties.

## C. Smith's Liability

■ Father's complaint alleged, but Smith's answer denied, that Bebensee was Smith's employee. No evidence upon this issue was presented in support of the motion to dismiss, and, for the purpose of our review of the trial court's order dismissing father's claim against Smith, we accept father's allegation as true. *See Abts v. Board of Education*, 622 P.2d 518 (Colo. 1980); *McDonald v. Lakewood Country Club, supra.*

It is not alleged that Smith personally made any report to the county or gave any advice to the mother. Smith's actions in negligently supervising Bebensee, as alleged by father, do not fall within the literal terms of § 19–10–110, and therefore, it could be argued that he may not take advantage of the immunity granted by that statute. Yet, to impose liability upon the employer of a mental health care provider who negligently, but in good faith, makes a report of child abuse to county officials would, in our opinion, violate the public policy inherent in that statute and would inhibit the reporting that that statute is designed to encourage. Thus, we conclude that the immunity granted by § 19–10–110 to the person actually making any report must also be extended to that person's employer.

■ However, if the employee making the report does not exercise good faith, so that immunity does not attach to that action, or if the actions of the employee are not immunized by the statute, no sound reason exists to immunize the employer from liability, whether that liability is based upon respondeat superior or upon the employer's active negligence in failing properly to supervise the employee. Hence, since we conclude that father presented a sufficient basis for the assertion of certain claims against Bebensee, it was error for the trial court to dismiss the claims stated against Smith.

### III. *Attorney Fees*

In view of our conclusion that some of father's claims for negligence, negligent infliction of emotional distress, outrageous conduct, and intentional infliction of emotional suffering against defendants have a legal and factual basis, it follows that the assertion of those claims was substantially justified within the meaning of § 13–17–102, C.R.S. (1987 Repl.Vol. 6A). Thus, the trial court erred in awarding attorney fees to defendants for defense of those claims.

Further, while we agree that the claims asserted by father on behalf of the children, as well as some of the negligence claims against defendants, were required to be dismissed, it cannot be said that the assertion of those claims was either substantially frivolous, substantially groundless, or substantially vexatious. Each claim involved novel questions of law upon which there was no determinative authority in Colorado at the time plaintiffs' complaint was filed. *See* § 13–17–102(4), C.R.S. (1987 Repl.Vol. 6A); *Western United Realty, Inc. v. Issacs*, 679 P.2d 1063 (Colo.1984). Thus, we cannot approve the award of any attorney fees against father in this case.

That part of the judgment dismissing all of the children's claims without prejudice, and dismissing the father's claims for negligence and negligent infliction of emotional distress, based upon the making of any report to county officials, is affirmed. In all other respects, the judgment of the district court is reversed, and the cause is remanded to that court for further proceedings consistent with the views expressed herein.

PIERCE and METZGER, JJ., concur.