**Patricia L. WALTER and Reuben A. Walter, Plaintiffs–Appellees,**

v.

**Larry L. HALL, Craig A. Hammond and Wild Horse Ranch, a partnership d/b/a Longhorn Ranch, Defendants–Appellants.**

No. 95CA0509.

Colorado Court of Appeals, Div. IV.

Sept. 26, 1996.

As Modified on Denial of Rehearing Dec. 27, 1996.

Certiorari Granted Aug. 4, 1997.

Roberta Earley, Colorado Springs, for Plaintiffs–Appellees.

Mark A. MacDonnell, Las Animas, for Defendants–Appellants.

Opinion by Judge TAUBMAN.

In this action based on allegations of trespass and deceptive trade practices, defendants, Larry L. Hall, Craig A. Hammond, and Wild Horse Ranch, appeal from the verdicts and judgment against them and in favor of plaintiffs, Patricia L. and Reuben A. Walter. We affirm in part, reverse in part, and remand for further proceedings.

In 1985, a developer established a subdivision known as Longhorn Ranch Phase III. Defendants Hall and Hammond worked for the original developer selling individual lots in the subdivision. In 1989, a bank acquired the property through foreclosure and two years later defendants purchased the property. However, the subdivision had never been registered with the Colorado Real Estate Commission (the commission).

Defendants thereafter applied to the commission for registration and certification as a subdivision developer. At that time, defendants disclosed that they had sold at least 47 properties prior to registration. Defendants also supplied documents to the commission that purported to show that prospective buyers would have legal access to lots within the subdivision. One of the two access routes to the subdivision was a road that runs across plaintiffs' pasture.

Although no easement existed for the use of that road, defendants had nevertheless indicated to purchasers of lots in the subdivision that plaintiffs' road was a proper means of access to their property. As a result, the traffic across plaintiffs' pasture increased considerably. In addition, fences across the plaintiffs' road were torn down, locks and chains were cut, and gates were left open. Plaintiffs lost two pasture leases because the gates and fences on the property had been torn down.

They subsequently filed a complaint against defendants alleging trespass, misrepresentation, unlawful taking, and deceptive trade practices under the Colorado Consumer Protection Act, § 6–1–101, et seq., C.R.S. (1992 Repl.Vol. 2) (CCPA). Also, defendant Hall filed a complaint against plaintiffs, alleging that the access road described in the plaintiffs' complaint had become a public highway by prescription. Before trial, the two cases were consolidated.

During trial, the court denied defendants' motion for a directed verdict on plaintiffs' claims brought under the CCPA and on their claims for damages. However, the trial court granted plaintiffs' motion for a directed verdict on their claim of trespass and on defendants' claim that a public highway had been established by prescription. Thereafter, the jury awarded plaintiffs actual damages, which were trebled pursuant to the CCPA, and also punitive damages, for a total of $244,000. This appeal followed.

## I.

Defendants first contend that the trial court erred when it directed a verdict in favor of plaintiffs on defendants' claim that a public highway had been established by prescription. We disagree.

Motions for a directed verdict are to be granted only when the evidence has such quality and weight as to point strongly and overwhelmingly to the fact that a reasonable jury could not arrive at a contrary verdict. *Jorgensen v. Heinz*, 847 P.2d 181 (Colo.App. 1992).

In passing on a motion for directed verdict, the trial court must view the evidence in the light most favorable to the party against whom the motion is directed, and every reasonable inference to be drawn from the evidence presented is to be considered in the light most favorable to that party. *Vikman v. International Brotherhood of Electrical Workers,* 889 P.2d 646 (Colo.1995).

Under § 43-2-201(1)(c), C.R.S. (1993 Repl.Vol. 17), a road over private lands that has been used adversely by the public without interruption or objection for 20 or more consecutive years is deemed a public highway by prescription. A party claiming a public highway by adverse use must prove that: (1) the public has used the road under a claim of right and in a manner adverse to the landowner's property interest; (2) the public has used the road without interruption for the statutory period of 20 years; and (3) the landowner had actual or implied knowledge of the public use of the road and made no objection. *Board of County Commissioners v. Flickinger,* 687 P.2d 975 (Colo.1984).

The trial court found that the defendants had presented no evidence to show adverse use by the public, but rather the evidence demonstrated that the use of the road had been permissive for ranching purposes only. Further, the record clearly reveals that plaintiff did object to the use of the road by the public. Indeed, it is undisputed that plaintiffs had erected fences with chains and locked gates on the road. *See Board of County Commissioners v. Flickinger, supra* (while not conclusive, the placement of a gate to obstruct free travel along a road will ordinarily render public use of a road permissive rather than adverse).

Thus, in viewing the evidence in the light most favorable to defendants, we conclude that the evidence was such that a reasonable jury could not have arrived at a contrary verdict. Accordingly, the trial court did not err in directing a verdict. *Vikman v. International Brotherhood of Electrical Workers, supra.*

## II.

Next, defendants contend that the part of the jury verdict awarding actual damages improperly was based on gross profits rather than net profits. In effect, defendants challenge the court's instruction as to damages and argue that the trial court erred in not using their proposed instructions on net profits. Defendants also challenge the sufficiency of the evidence supporting the award of actual damages. We find no reversible error.

## A.

In determining the effect of a particular jury instruction, the instructions must be read as a whole and, if taken as a whole, they adequately inform the jury of the law, there is no reversible error. *Idrogo v. People,* 818 P.2d 752 (Colo.1991).

Damages sustained by a business must relate to loss of net profits; they may not be speculative, remote, imaginary, or impossible to ascertain. *Lee v. Durango Music,* 144 Colo. 270, 355 P.2d 1083 (1960). However, where operating expenses are fixed, gross profits may be awarded because they are equivalent to net profits. *P & M Vending Co. v. Half Shell of Boston, Inc.,* 41 Colo.App. 78, 579 P.2d 93 (1978).

Here, believing that net profits was the appropriate measure of damages, defendants tendered a jury instruction on the trespass claim that read in pertinent part: "To the extent that any actual damages have been so proved by the evidence, you shall award an amount which will reasonably compensate the Plaintiffs for ... the reasonable net profit of any lease opportunities lost." Defendants also tendered a related instruction applicable both to the trespass and CCPA claims.

The court rejected defendants' proposed instructions and instead instructed the jury on the trespass claim that: "To the extent that any actual damages have been so proved by the evidence, you shall award an amount which will reasonably compensate the Plaintiffs for ... the loss of any lease income caused by the trespass." No instruction on the measure of damages was given concerning the CCPA claim.

Here, there was evidence presented to the jury indicating that plaintiffs lost two pasture leases because of defendants' actions and that, under such pasture leases, plaintiffs would have provided various services, such as checking regularly on cattle, maintaining fences, providing cake, water, and salt, and ensuring the health of the cattle. However, there was undisputed testimony that the prospective lessees would have paid for supplies, such as cake and liquid feed, in addition to the cost of leasing the pasture land. Further, there was no evidence indicating that plaintiffs would have incurred any out-of-pocket expenses, except for gas for their pick-up truck. Thus, for example, there was no testimony that plaintiffs intended to hire any additional ranch hands to check on cattle under any pasture leases they would have obtained.

Under these circumstances, there was no difference or only a minimal difference between plaintiffs' gross profits and net profits; hence, an instruction permitting the jury to award actual damages was proper. *See Jefferson–Western Corporation v. Chefas,* 670 P.2d 431 (Colo.App.1983) (where there was no evidence that would indicate there were any marketing expenses attributable to a 10 percent crop loss, the trial court did not err in refusing to instruct the jury on net profits); *see P & M Vending Co., Inc. v. Half Shell of Boston, Inc., supra* (actual damages were measured by loss of gross profits where evidence showed plaintiff's expenses were fixed and that there would be no difference or only a minimal difference between plaintiff's revenues and plaintiff's net profits).

Thus, because the instructions as a whole properly apprised the jury of the law, we conclude that there was no reversible error in refusing the defendants' tendered instructions. *See People v. Orona,* 907 P.2d 659 (Colo.App.1995).

### B.

Because we have concluded that the trial court's jury instruction in effect allowing the jury to award damages based upon gross profits was proper, we do not address defendant's contention that sufficient evidence was not offered at trial as to the nature of plaintiffs' expenses associated with their lost leases.

Further, based upon our review of the record, we conclude there was sufficient evidence presented from which the jury could conclude that plaintiffs' actual damages were $72,000.

### III.

### A.

■ Defendants further maintain that the jury verdict was inconsistent with the trial court's sanction limiting the damages plaintiffs could recover. We do not agree.

As a sanction for discovery violations by plaintiffs, the trial court ordered that plaintiffs' damages be limited to:

> those damages which flow from the loss of the two leases that were discussed and described at the preliminary injunction hearing worth at least $25,000.00 and any treble damages; and, in addition, any punitive damages that may flow from evidence that is established or proven at trial.

Contrary to defendants' contention, this order does not limit plaintiffs' damages to $25,000; rather, it states that the damages were worth *at least* that much. Thus, we conclude that the jury verdict awarding more than $25,000 was not inconsistent with that order.

### B.

■ Defendants also assert that the trial court erred in not reducing the damage award based on judicial admissions made by plaintiffs. We disagree.

■ A judicial admission is a formal, deliberate declaration that a party or his or her attorney makes in a judicial proceeding for the purposes of dispensing with proof of formal matters or of facts about which there is no real dispute. Judicial admissions are binding on the party who makes them, are evidence against such party, and may constitute the basis of a verdict. *Kempter v. Hurd,* 713 P.2d 1274 (Colo.1986). Generally, the focus is on whether the alleged admission

was unequivocal. *Larson v. A.T.S.I.*, 859 P.2d 273 (Colo.App.1993).

Here, defendants filed a motion for sanctions against plaintiffs to limit their recovery to damages flowing from the loss of the two leases, as well as any treble and punitive damages. In their response to that motion, plaintiffs acknowledged that testimony had revealed that the losses flowing from the breached leases amounted to $25,000. Also, plaintiffs provided defendants with a discovery document that set forth their estimated loss as $23,646.

Defendants assert that those documents constitute judicial admissions regarding the level of plaintiffs' damages and that, therefore, the actual damage award of $72,000 was excessive. We are not persuaded.

These statements by plaintiffs were not unequivocal as to the total amount of damages. Indeed, in the response to the motion for sanctions, plaintiffs specifically stated that they were under no obligation to determine the exact amount of their damages, and that the matter would later be determined by a jury.

Moreover, the estimated amount of damages in each of those documents was based upon a one-year lease. Testimony from a rancher revealed that he had intended to lease the pasture for 3 to 5 years. Thus, even if plaintiffs had stated unequivocally that their damages totalled $25,000 in one year, the jury could have multiplied that figure to determine damages during an anticipated multi-year lease.

Accordingly, we conclude that the trial court was not required to reduce the amount of the actual damage award. *See Lee's Mobile Wash v. Campbell*, 853 P.2d 1140 (Colo. 1993) (it is the sole province of the jury to fix fair and just damages and mere disagreement with the amount is not a sufficient ground to overturn an award of damages).

### IV.

Defendants next contend that the trial court erred in not granting their motions for a directed verdict and judgment notwithstanding the verdict based on plaintiffs' claims under the CCPA. We are not persuaded.

### A.

First, defendants maintain that because plaintiffs are not consumers, they do not have standing to bring a claim under the CCPA. We disagree.

The proper inquiry on standing is whether the plaintiff has suffered injury in fact to a legally protected interest as contemplated by statutory or constitutional provisions. If standing exists, the case must proceed to judgment on the merits and a determination as to whether the injury in fact resulted from the alleged action of the defendant. *Wimberly v. Ettenberg*, 194 Colo. 163, 570 P.2d 535 (1977).

In construing statutes, we give effect to the intent of the General Assembly by looking first at the plain language of the statute. *Moody v. Corsentino*, 843 P.2d 1355 (Colo.1993). To effectuate legislative intent, we must give statutory terminology its commonly accepted meaning. *Boulder County Board of Equalization v. M.D.C. Construction Co.*, 830 P.2d 975 (Colo.1992). A strained or forced construction of a statutory term is to be avoided, and we must look to the context of a statutory term for its proper meaning. *State v. Hartsough*, 790 P.2d 836 (Colo.1990).

Here, the CCPA provides that: "The provisions of this article shall be available to any person in a civil action for any claim against any person who has engaged in or caused another to engage in any deceptive trade practice listed in section 6–1–105 or section 6–1–105.5." Section 6–1–113(1), C.R.S. (1992 Repl.Vol. 2). "Person" under the CCPA includes both individuals and partnerships. Section 6–1–102(6), C.R.S. (1992 Repl.Vol. 2).

A division of this court has concluded that the CCPA is not limited to actions by consumers and was meant to encompass other entities, such as corporations. *See Heller v. Lexton–Ancira Real Estate Fund, Ltd.*, 809 P.2d 1016 (Colo.App.1990), *rev'd on other grounds*, 826 P.2d 819 (Colo.1992) (rejecting claim that because consumers are intended beneficiaries of the act, businesses do not

have standing). However, no Colorado appellate court has considered whether third-party non-consumers have standing under the CCPA.

The plain language of § 6–1–113 provides that any person may bring an action under the CCPA. "Any" means without restriction or limitation. *Obert v. Department of Social Services,* 766 P.2d 1186 (Colo.1988). Thus, we conclude that third-party non-consumers have standing to bring actions under the CCPA, provided they can demonstrate that they satisfy the two-part test of *Wimberly v. Ettenberg, supra.*

This conclusion is reinforced by our review of similar deceptive trade practices acts in other states. Courts in jurisdictions with statutory language similar to that contained in § 6–1–113 have broadly interpreted the "any person" statutory language and have found that third-party non-consumers have standing to bring actions. *See generally* Annotation, *Scope & Exemptions of State Deceptive Trade Practice & Consumer Protection Acts,* 89 A.L.R.3d 399 (1979); National Consumer Law Center, *Unfair and Deceptive Acts and Practices* (1990).

For example, in *Sullivan's Wholesale Drug Co. v. Faryl's Pharmacy, Inc.,* 214 Ill.App.3d 1073, 158 Ill.Dec. 185, 573 N.E.2d 1370 (1991), the statute provided that "any person" who suffered damage as a result of a violation of the act could bring an action. The court stated that to accept the defendants' contention that the plaintiff did not have standing because he was not a consumer would require it to ignore the clear and unambiguous language of the statute.

Similarly, in *Vitolo v. Dow Corning Corp.,* 166 Misc.2d 717, 634 N.Y.S.2d 362 (Sup.Ct. 1995), the statute gave "any person" who had been injured by a violation thereof the right to bring an action. In holding that a non-consumer had standing to bring an action, the court stated that the definition of "person" was much broader than that of "consumer."

The rulings of other courts are generally in agreement. *See Maillet v. ATF–Davidson Co.,* 407 Mass. 185, 552 N.E.2d 95 (1990) (as contrasted to previous statutory language, current version of the act did not limit relief to consumers or those in privity with the defendant); *Neveroski v. Blair,* 141 N.J.Super. 365, 358 A.2d 473 (1976) (where statute granted a remedy to "any person" who suffered any ascertainable loss as a result of statutorily declared unlawful practice, plaintiff's lack of privity with the defendant would not bar claim); *Hart v. Moore,* 155 Misc.2d 203, 587 N.Y.S.2d 477 (Sup.Ct.1992) (inasmuch as legislature had not used term "consumer," non-consumer plaintiff had standing to bring an action under consumer protection act); *Escalante v. Sentry Insurance,* 49 Wash.App. 375, 743 P.2d 832 (1987) (third-party beneficiaries under an insurance policy had standing to bring action).

Here, plaintiffs have sufficiently alleged injury in fact by asserting they lost two pasture leases as a result of defendants' actions. Further, plaintiffs, although not consumers, have a legally protected interest under § 6–1–113(1), C.R.S. (1992 Repl.Vol. 2).

Thus, we conclude that non-consumer third parties, such as plaintiffs, have standing under the CCPA.

### B.

Next, defendants assert that, even if plaintiffs had standing to bring their claim, they failed to present evidence of causation. Again, we disagree.

Where money damages are sought for violation of the CCPA, a plaintiff must show a causal connection between the alleged violation and the amounts he or she seeks to recover. *Witters v. Daniels Motors, Inc.,* 524 P.2d 632 (1974) (Not Selected for Official Publication).

Here, the jury determined that defendants had violated the following two provisions of the CCPA:

A person engages in deceptive trade practice when in the course of such person's business, vocation, or occupation, such person:

(a) Knowingly passed off goods, services, or property as those of another;

. . . .

(z) Refuses or fails to obtain all governmental licenses or permits required to perform the services or to sell the goods, foods, services, or property as agreed to or contracted for with a consumer.

Section 6–1–105(1) C.R.S. (1992 Repl.Vol. 2).

At trial, the evidence revealed that, by representing to their customers that an easement existed across plaintiffs' property, defendants caused damage to the road and caused two prospective pasture leases to be lost. Moreover, it is undisputed that the actions and representations of defendants caused fences to be torn down, locks to be cut, and gates to be left open.

Thus, we conclude that sufficient evidence of causation was presented at trial and that, therefore, the trial court did not err in refusing to direct a verdict for defendants. *See Jorgensen v. Heinz, supra.*

### V. Prior Act Evidence

 Defendants next contend that the trial court erred in admitting three instances of prior act evidence. We disagree.

 The admissibility of other act evidence is governed by CRE 404(b). Pursuant to that rule, evidence of prior bad acts is not admissible as character evidence in order to show that a person acted in conformity therewith. However, such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See Boettcher & Co., Inc. v. Munson,* 854 P.2d 199 (Colo.1993).

 The Colorado Rules of Evidence strongly favor the admission of material evidence, and a trial court has substantial discretion in deciding questions concerning the admissibility of evidence. *People v. Quintana,* 882 P.2d 1366 (Colo.1994). Absent an abuse of that discretion, the evidentiary rulings of a trial court will be affirmed. *People v. Ibarra,* 849 P.2d 33 (Colo.1993).

Here, plaintiffs offered the following evidence of prior similar acts to demonstrate absence of mistake or accident: (1) testimony regarding a dispute over access to a subdivision owned by defendants in Alamosa County; (2) a letter to defendants concerning another access dispute; and (3) testimony regarding prior real estate litigation in which defendants were accused of selling property without proper title.

As to the first and third incidents, the trial court considered the criteria for admissibility set forth in *People v. Spoto,* 795 P.2d 1314 (Colo.1990) and did not abuse its discretion in admitting this testimony.

With respect to the second incident, the trial court applied an abbreviated *Spoto* analysis and found the letter admissible. Even if the court erred in admitting the letter, however, such error was harmless. Before plaintiffs moved for admission of the letter, testimony had already been presented without objection concerning a prior dispute involving access to another property.

Thus, we conclude that the trial court did not abuse its discretion in admitting the prior act evidence.

### VI. Damages

 Finally, relying on *Lexton-Ancira Real Estate Fund v. Heller,* 826 P.2d 819 (Colo. 1992), defendants contend that, under the circumstances presented here, plaintiffs may not recover both treble and punitive damages. We agree with this contention.

Initially, we agree with defendants that it was sufficient to raise this issue in a post-trial motion. *See Lexton-Ancira Real Estate Fund v. Heller, supra.*

In *Lexton-Ancira,* the supreme court held that, generally, a plaintiff may not recover treble and punitive damages premised on the same facts because such damage awards serve similar purposes. We agree with plaintiffs that their claims alleging trespass and violation of the CCPA were premised upon different facts. Nevertheless, because the special verdict form did not permit the jury to allocate its award of actual damages between plaintiffs' claims, it is impossible to determine what portion of those damages was attributed to the trespass claim as opposed to the CCPA claim.

Here, the trial court trebled plaintiff's award of $72,000 in actual damages and also awarded plaintiffs $28,000 in punitive damages, as assessed by the jury.

If the entire amount of actual damages here is attributable to the CCPA claims, then the award of punitive damages may not stand either because it would not be supported by an award of actual damages on the trespass claim, or because it would be duplicative of the award of treble damages on the CCPA claim.

On the other hand, if some portion of the award of damages is attributable to the trespass claim, then only the remaining amount of actual damages could be trebled for the CCPA claim.

Because an appellate court has a duty to attempt to reconcile the jury's answers to a special verdict to the extent possible, based upon the evidence and instructions given, *see Hock v. New York Life Insurance Co.*, 876 P.2d 1242 (Colo. 1994), we conclude that the award of punitive damages to plaintiffs must be vacated. That way, plaintiffs may obtain the maximum recovery possible without having received a duplicative award of punitive and treble damages.

Accordingly, the judgment is affirmed in all respects except as to the award of punitive damages. That part of the judgment is reversed, and the cause is remanded with directions that the trial court vacate the punitive damages award to plaintiffs in the amount of $28,000.

DAVIDSON and BRIGGS, JJ., concur.