Yolanda MARTINEZ, Plaintiff–Appellant,

v.

Jeanne C. LEWIS, personal representative
of the estate of Frederick A. Lewis, Jr.,
M.D., individually and d/b/a Frederick A.
Lewis, M.D., P.C., Defendants–Appellees,

and

State Farm Mutual Automobile
Insurance Company,
Defendant.

No. 95CA1411.

Colorado Court of Appeals,
Div. I.

Nov. 29, 1996.

Rehearing Denied Dec. 27, 1996.

Certiorari Granted Sept. 2, 1997.

Fest, Jessel & Hemphill, LLC, Danny R. Hemphill, Bruce F. Fest, Boulder, Thomas D. Roberts, Asheville, NC, for Plaintiff-Appellant.

Kennedy & Christopher, P.C., Ronald H. Nemirow, Denver, for Defendant-Appellee Frederick A. Lewis, Jr., M.D., and Frederick A. Lewis, Jr., M.D., P.C.

Creamer and Seaman, P.C., Gregory R. Giometti, Thomas J. Seaman, Denver, for Defendant-Appellee State Farm Mutual Automobile Insurance Company.

Bahr Kreidle & Travis, P.C., Todd A. Travis, Michael P. Bahr, Littleton, Amicus Curiae for Colorado Trial Lawyers Association.

Campbell Latiolais & Ruebel, P.C., Colin C. Campbell, Denver, Amicus Curiae.

Richard W. Laugesen, Denver, Amicus Curiae.

Opinion by Judge MARQUEZ.

Plaintiff, Yolanda Martinez, appeals the summary judgment in favor of defendant Frederick A. Lewis, Jr., M.D., (Lewis) (now Estate of Frederick A. Lewis, Jr., and Jeanne C. Lewis, by substitution) in which the court held that Lewis, who was retained by defendant State Farm Mutual Automobile Insurance Company to perform independent medical evaluations of plaintiff, owed her no duty in performing the evaluations, and also dismissed her Colorado Consumer Protection Act claim. We affirm.

The following facts are undisputed. Plaintiff was injured in September 1991 when a vehicle driven by an uninsured motorist struck the rear of her car. Plaintiff subsequently sought treatment from a psychologist for cognitive and psychological difficulties she was experiencing and submitted the bills for her psychological treatment to State Farm, her automobile insurer, for payment.

State Farm retained Lewis to conduct, in March 1992, an independent medical examination of plaintiff and to render his opinions to State Farm regarding the nature and ex-

tent of her injuries. After reviewing the available medical records, interviewing plaintiff, and running a series of tests, Lewis reported to State Farm that in his opinion plaintiff was "malingering," and that further treatment was unnecessary. Based at least in part on Lewis' recommendation, State Farm decided to deny plaintiff future psychiatric or psychological care under her no-fault automobile insurance policy.

Plaintiff filed this action in September 1993 against State Farm alleging a violation of the no-fault statute, breach of contract, and breach of the duty of good faith and fair dealing. While preparing for trial, counsel for State Farm arranged for plaintiff to see Lewis for another evaluation. After reviewing her medical records, running more tests, and re-interviewing her, Lewis again reported to State Farm that his impressions were that plaintiff was a malingerer. In a third report issued in September 1994, Lewis reconfirmed his previous conclusions.

Plaintiff then amended her complaint to assert claims against Lewis for professional negligence and breach of the Colorado Consumer Protection Act. She alleged, *inter alia*, under her professional negligence claim, that Lewis was neither competent nor qualified to select, administer or interpret certain computerized neuropsychological test results, that because of Lewis' negligent misdiagnosis and recommendations, she had not been paid no-fault benefits or received necessary treatment, and that Lewis concealed the fact that he lacked certain qualifications regarding testing upon which he relied.

Lewis moved for summary judgment on both issues attaching to his motion various exhibits, including correspondence between Lewis and State Farm. In response, plaintiff submitted exhibits that included copies of portions of various depositions, correspondence, Lewis' reports, and documentation questioning Lewis' competence in neuropsychological testing. Lewis' motion was granted in its entirety. An order pursuant to C.R.C.P. 54(b) certifying the judgment as final was subsequently entered.

Lewis died during the pendency of this appeal, and the estate of Frederick A. Lewis, Jr., M.D., and the estate's personal representative, Jeanne C. Lewis, were substituted for Lewis.

## I.

Plaintiff contends that Lewis owed her a duty to use due care in formulating any opinions, diagnosis, and recommendations which the insurance company would consider in its decision whether to deny no-fault benefits. We disagree.

## A.

Summary judgment is a drastic remedy that is warranted only on a clear showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56; *Greenberg v. Perkins,* 845 P.2d 530 (Colo.1993).

The party moving for summary judgment bears the burden of establishing the lack of a triable factual issue, and if there are any doubts as to the existence of such an issue, they must be resolved against that party. *Greenberg v. Perkins, supra.*

The party opposing summary judgment is entitled to the benefit of all favorable inferences that may be drawn from the facts contained in the record. *Churchey v. Adolph Coors Co.,* 759 P.2d 1336 (Colo.1988).

Appellate review of a judgment granting a motion for summary judgment is *de novo. Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo.1995).

To recover on a claim of negligence, a plaintiff must prove the existence of a legal duty, a breach of that duty, causation, and damages. *Perreira v. State,* 768 P.2d 1198 (Colo.1989). A negligence claim will fail if based on circumstances for which the law imposes no duty. *University of Denver v. Whitlock,* 744 P.2d 54 (Colo.1987).

Whether a defendant owes a plaintiff a legal duty is a question of law. *Metropolitan Gas Repair Service, Inc. v. Kulik,* 621 P.2d 313 (Colo.1980).

A court considers a variety of factors when determining whether to recognize a

duty. For instance, the court weighs the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the defendant's conduct, the magnitude of the burden of guarding against the harm, and the consequence of placing the burden on the defendant. *Smith v. City & County of Denver*, 726 P.2d 1125 (Colo.1986).

■ Since no one factor is controlling, the question whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards—whether reasonable persons would recognize and agree that it exists. *University of Denver v. Whitlock, supra.*

■ Medical malpractice or professional negligence is a particular type of negligence action. The duty of care on which a medical malpractice action is predicated arises out of the professional relationship between physician and patient. If a physician undertakes to treat or otherwise provide medical care to another, the physician thereby expressly or impliedly contracts to exercise reasonable and ordinary care and diligence to fulfill that purpose. In such a circumstance, a physician-patient relationship exists. *Greenberg v. Perkins, supra.*

■ In the absence of such a relationship, any duty to be recognized in connection with the performance of professional services must be determined in each instance by taking into account the nature of the services to be performed, the circumstances surrounding the request for service, and any information gleaned by the physician during performance of the services that would suggest a need to proceed with care in order to avoid injury to the person being examined. *Greenberg v. Perkins, supra.*

■ Although *Greenberg v. Perkins, supra*, was decided in the context of a C.R.C.P. 35(a) examination in which the parties agreed to the examination, we conclude that the principles set forth in that case govern here. In *Greenberg*, the examining doctor referred the plaintiff to an occupational conditioning center for an evaluation that consisted of a series of physical exercises designed to measure the plaintiff's strength and range of motion. Both the doctor and the therapist were made aware of plaintiff's previous back surgeries and injuries. Following the evaluation, the plaintiff began to experience pain in her lower back and eventually was forced into surgery to relieve the discomfort. The supreme court held that a physician who conducts an independent medical examination owes a duty of care to an examinee not to refer her for testing of a type that foreseeably will result in injury based on information known to the physician.

It is undisputed that plaintiff and Lewis neither had a physician-patient relationship nor an express contract. Alternatively, no facts in this case indicate that a contract for medical services arose by implication. Plaintiff does not contend that she sought medical advice or treatment from Lewis, that he advised her in any way, or that he failed to inform her of some unknown condition.

There is also no dispute that Lewis was retained solely by State Farm in order to review plaintiff's past medical records, perform his own examination, and report to State Farm what he believed to be the diagnosis, the prognosis, and other information about what treatment, if any, was necessary. The agreement between State Farm and Lewis was solely for the benefit of State Farm; at no time was Lewis to advise the patient on a recommended course of treatment.

In her deposition, which was attached to defendant's reply in support of his motion for summary judgment, plaintiff states that she knew nothing of Lewis' qualifications, background, or about the nature of the services he was going to be rendering. She simply agreed to meet with Lewis pursuant to the obligation in her insurance contract to attend medical examinations by physicians selected by State Farm.

Further, Lewis' report to State Farm mentions that before his interview with plaintiff, he informed her that the information obtained during the exam was not confidential and that a report would be given to the referring party.

Thus, the trial court properly concluded there was no physician-patient relationship.

■ In other jurisdictions, the absence of a physician-patient relationship has resulted in a determination that there is no duty of due care owed by the doctor to the examinee. *See Hafner v. Beck*, 185 Ariz. 389, 916 P.2d 1105 (Ct.App.1995)(since no physician-patient relationship existed, duty ran not from the independent medical examiner to the examinee, but from the independent medical examiner to the insurance carrier); *Keene v. Wiggins*, 69 Cal.App.3d 308, 138 Cal.Rptr. 3 (1977)(where a doctor conducts an examination of an injured employee solely for the purpose of rating the injury for the employer's workers' compensation insurance carrier, the doctor is not liable to the person being examined for negligence in making that report—doctor's duty of due care in preparation of report runs only to the employer and insurance carrier); *Rogers v. Horvath*, 65 Mich.App. 644, 237 N.W.2d 595 (1975)(a doctor who neither advised nor treated plaintiff did not owe plaintiff a duty arising from a doctor patient relationship when the plaintiff lost benefits from an insurance company based on the doctor's examination); *Violandi v. City of New York*, 184 A.D.2d 364, 584 N.Y.S.2d 842 (N.Y.App.Div.1992)(a physician-patient relationship does not exist when the examination is conducted solely for the purpose or convenience or on behalf of an employer); *Tomko v. Marks*, 412 Pa.Super. 54, 602 A.2d 890 (1992)(plaintiff did not have a medical malpractice claim when the examination was conducted solely at the request of plaintiff's employer); *Wilson v. Winsett*, 828 S.W.2d 231 (Tex.Civ.App.1992)(refusing to extend a duty to inform a noninquiring examinee of the doctor's findings from physician to a nonpatient examinee).

We agree with the reasoning of these cases and adopt the same principle here.

### B.

Plaintiff relies on *Greenberg v. Perkins, supra*, which held that a physician owes a duty to a nonpatient examinee to conduct the examination in such a manner so as not to cause harm to that person, as dispositive of the issue of duty. We disagree.

■ Here, plaintiff contends that her injury resulted from denied and delayed treatment. She stated in her deposition that she was not physically injured while undergoing examinations by Lewis. Under these circumstances, since no doctor-patient relationship existed between plaintiff and Lewis, since she does not assert injury during the course of the examination, and since she did not rely on Lewis for treatment, care, or advice, we hold that Lewis is not liable to plaintiff for professional negligence. The doctor's duty to use reasonable care in making and preparing the report runs to the party requesting it; here, that was State Farm, not plaintiff. *See Greenberg v. Perkins, supra.*

### C.

■ Plaintiff nevertheless claims that her injury arises from the denial of her benefits by the insurance company. She claims that Lewis knew the purpose for which his report would be used, and because of his allegedly erroneous review of her psychological health and the subsequent denial of benefits, it was over 16 months before she was able to receive treatment for her injuries.

However, both in Colorado, *see Greenberg v. Perkins, supra*, and in other jurisdictions, no liability has been found for harm allegedly resulting from a denial of benefits, *see LoDico v. Caputi*, 129 A.D.2d 361, 517 N.Y.S.2d 640 (N.Y.App.Div.1987) (plaintiff made no claim that he suffered bodily injury during the course of his physical examination); *Johnston v. Sibley*, 558 S.W.2d 135 (Tex.Civ.App.1977)(plaintiff made no contention that he suffered bodily injury), or from denial of other economic interest, *see Felton v. Schaeffer*, 229 Cal.App.3d 229, 279 Cal. Rptr. 713 (1991)(discussing that an actionable injury is physical injury, not mere economic injury). *But see Armstrong v. Morgan*, 545 S.W.2d 45 (Tex.Civ.App.1977)(in action alleging loss of job, position, and benefits, actionable negligence would be shown if doctor gave inaccurate report and appellant was injured as result).

Nor does *Montoya v. Bebensee*, 761 P.2d 285 (Colo.App.1988), upon which plaintiff also relies, settle the issue in this case. In *Montoya*, a psychologist's associate made an inac-

curate report to county officials and others that the plaintiff father had sexually abused his daughter. A division of this court concluded that a "mental health care provider owes a duty to any person, who is the subject of any public report or other adverse recommendation by that provider, to use due care in formulating any opinion upon which such report or recommendation is based." *Montoya v. Bebensee, supra,* 761 P.2d at 289. Even though in that case the health care provider did not physically injure the plaintiff, the court concluded that the plaintiff could recover against the health care provider. The court arrived at this conclusion "after considering both the great social utility of having therapists make reports of suspected child abuse and the significant risk of substantial injury that may occur to one who is falsely accused of being a child abuser." *Montoya v. Bebensee, supra,* 761 P.2d at 288.

However, *Montoya* is distinguishable in that the mental health care provider there did not examine plaintiff at the request of a third party. Further, Lewis' report was used solely in-house at State Farm; his report was never made public. Additionally, there is no fear of others attaching a great stigma to Lewis' report as it was used only to obtain an opinion about plaintiff's injuries in order for the insurance company to make a determination about no-fault benefits. *See Card v. Blakeslee,* 937 P.2d 846 (Colo.App. 1996).

## D.

Nor do we find any other ground for imposing a duty of due care on Lewis.

Here, the factors to be considered in determining whether to recognize a duty, *see Smith v. City & County of Denver, supra,* weigh in favor of not imposing a duty on Lewis. First, the risk involved in this case is that the insurer will receive and rely on an independent medical examiner's unduly unfavorable report, and possibly deny benefits based on this report. Because an insurer must act reasonably and without knowledge of or in reckless disregard for the fact that no reasonable basis existed for denying the claim, *Travelers Insurance Co. v. Savio,* 706 P.2d 1258 (Colo.1985), the examinee has re-

course against the insurance company in an action for breach of good faith and fair dealing or breach of contract.

The foreseeable harm that might result from the possibility that a physician will fail to diagnose or report a serious health problem is outweighed by the social utility of independent medical examinations.

In addition, there is social utility in allowing no-fault insurance companies to request independent medical examinations performed by physicians of their choice. Insurance companies "must be accorded wide latitude in [their] ability to investigate claims and to resist false or unfounded efforts to obtain funds not available under the contract of insurance." *Travelers Insurance Co. v. Savio, supra,* 706 P.2d at 1274. Independent medical examinations at the insurance company's request allow it to make informed decisions about whether to deny benefits based on a physical or psychological condition.

When assessing the magnitude of the burden of guarding against the harm and the consequence of placing the burden on the defendant, we should not diminish the value of independent medical examinations. One possible repercussion of imposing a duty of due care upon an independent medical examiner is the risk that experts would be less willing to make independent conclusions and opinions adverse to the examinee for fear of being subject to liability. *See Haffner v. Beck, supra.* The social utility of independent medical examinations producing informed decisionmaking and policy by insurance companies outweighs the possible consequences of imposing a duty. Balancing these factors weighs against establishing a duty of due care under the circumstances here.

## II.

Plaintiff next contends that the trial court erred in dismissing her claim under the Colorado Consumer Protection Act, § 6–1–101, et seq., C.R.S. (1992 Repl.Vol. 2) (the Act). Plaintiff specifically argues that Lewis violated § 6–1–105, C.R.S. (1992 Repl.Vol. 2) by knowingly making a false representation as

to the characteristics, uses, and benefits of his psychological testing and reports, and that he represented that his services were of a particular standard. She thus contends that Lewis represented that his reports were valid and that State Farm could rely on them in determining its course of action. We conclude that her claim was properly dismissed.

Section 6–1–105(2), C.R.S. (1992 Repl.Vol. 2) of the Act provides in pertinent part:

[A] person engages in a deceptive trade practice when in the course of such person's business, vocation, or occupation, such person ...

. . . .

(e) knowingly making a false representation as to the characteristics ... uses, benefits ... of ... services ... therewith [or]

. . . .

(g) represents that ... services ... are of a particular standard, quality or grade ... if he knows or should know they are of another.

Section 6–1–113(1), C.R.S. (1992 Repl.Vol. 2) provides:

The provisions of this article shall be available to any person in a civil action for any claim against any person who has engaged in or caused another to engage in any deceptive trade practice listed in 6–1–105 or 6–1–105.5.

The goal of a court in construing a statute is to ascertain and give effect to the intent of the General Assembly. In order to determine the legislative intent, courts look first to the statutory language. *May Department Stores Co. v. State ex rel. Woodard*, 863 P.2d 967 (Colo.1993). Each word in a statute has a meaning that is presumed to be consistent with the intent of the statute. *Farmers Group, Inc. v. Williams*, 805 P.2d 419 (Colo. 1991). A statute should be interpreted so as to give effect to all its parts. *People in Interest of J.L.R.*, 895 P.2d 1151 (Colo.App. 1995).

Actions may be brought by the attorney general or the district attorney to protect the public from deceptive trade practices by enjoining, assessing civil penalties, or otherwise restraining others from engaging in deceptive trade practices. Sections 6–1–107 and 6–1–110, C.R.S. (1992 Repl.Vol. 2); *see also* Lee, *Colorado Consumer Protection Act: Panacea or Pandora's Box*, 70 Den. U.L.Rev. 141 at 148–49 (1992).

Potential consumers are the persons ultimately protected from these deceptive trade practices by such public actions. *See May Department Stores Co. v. State ex rel. Woodard, supra; Western Food Plan, Inc. v. District Court*, 198 Colo. 251, 598 P.2d 1038 (1979); *People ex rel. Dunbar v. Gym of America, Inc.*, 177 Colo. 97, 493 P.2d 660 (1972).

The Act also provides that the provisions of the article shall "be available" to "any person" for any claim against any person who has engaged in deceptive trade practices. Section 6–1–113, C.R.S. (1992 Repl. Vol. 2).

In construing the Act, a court should refer to the group of persons to whom the statute applies, the kind of sanction imposed, the nature of the statute's subject matter, and the economic and social desirability of the statute's particular legislative policy. *People ex rel. Dunbar v. Gym of America, Inc., supra.*

In this regard, we note that the Act is entitled the Colorado Consumer Protection Act. Section 6–1–101, C.R.S. (1992 Repl.Vol. 2); *see Martinez v. Continental Enterprises*, 730 P.2d 308 (Colo.1986) (although the title of a statute is not dispositive of legislative intent, it may be used as an aid in construing a statute).

Although the legislative history of the Act was not memorialized in any way, courts have extracted a legislative purpose. *See May Department Stores Co. v. State ex rel. Woodard, supra;* Lee, *supra*, 70 Den. U.L.Rev. at 148–49.

The Act was enacted in order to control various deceptive trade practices in dealing with the public. *People ex rel. MacFarlane v. Alpert Corp.*, 660 P.2d 1295 (Colo.App.1982). Its broad legislative pur-

pose is to provide prompt, economical, and readily available remedies against consumer fraud. *Western Food Plan, Inc. v. District Court, supra.*

In discussing what constitutes a violation of the statute sufficient to warrant a civil penalty, the supreme court in *May Department Stores Co. v. State ex rel. Woodard, supra,* 863 P.2d at 980, stated that the Act was enacted to "protect the public" and to abate evils which are deemed to arise from the pursuit of business. *See People ex rel. Moore v. Burgess T.V. Service,* 36 Colo.App. 19, 534 P.2d 361 (1975)(the deceptive trade practices which are the subject matter of the Act injuriously affect both honest business persons and consumers).

Actions brought under § 6–1–113(1) of the Act have essentially been based on claims of false representations made to the plaintiff or the public. *See Nienke v. Naiman Group, Ltd.,* 857 P.2d 446 (Colo.App.1992)(misrepresentation regarding loan to plaintiff); *Robinson v. Lynmar Racquet Club, Inc.,* 851 P.2d 274 (Colo.App.1993)(claim under § 6–1–113(1) by a customer to whom certain representations were made by health club); *Classic Auto Sales, Inc. v. Schocket,* 832 P.2d 233 (Colo.1992)(the torts at issue required as essential elements the misrepresentation of a material fact); *Heller v. Lexton–Ancira Real Estate Fund, Ltd.,* 809 P.2d 1016 (Colo.App. 1990), *rev'd on other grounds,* 826 P.2d 819 (Colo.1992) (action for unfair competition or fraud was recognized under the provisions of § 6–1–113(1) where the plaintiff company was directly victimized by the defendant, as the defendant, among other things, "passed off" to show exhibitors its gift and jewelry show as that of the plaintiff); *Dodds v. Frontier Chevrolet Sales & Service, Inc.,* 676 P.2d 1237 (Colo.App.1983)(action for fraud and deceit by purchaser).

More recently, a division of this court has ruled that a landowner had an actionable claim under § 6–1–113(1) when defendant misrepresented to prospective buyers of land that they had legal access over the landowner's property. *Walter v. Hall,* 940 P.2d 991 (Colo.App. 1996). Noting that § 6–1–113(1) states that the provisions of the Act "shall be available to any person," the court in *Walter*

concludes that "any person may bring an action" under the Act. Although *Walter* concludes that to have standing a plaintiff must satisfy the requirements of *Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977), the broad language of *Walter* noted above suggests that the provisions of the Act are available to "any person" almost without limitation. However, we are not persuaded that the Act is applicable here.

 Here, plaintiff does not assert that Lewis made misrepresentations to her or that she relied on his misrepresentations. Nor is there evidence that any misrepresentation was made to the public. Rather, Lewis' conduct occurred in the context of the contract between Lewis and State Farm. *See United States Welding, Inc. v. Burroughs Corp.,* 615 F.Supp. 554 (D.C.Colo.1985) (plaintiff in a lease arrangement not entitled to relief under the Act in action to redress a purely private wrong).

Accordingly, we conclude that, under the circumstances here, plaintiff is not within the group of persons the statute was intended to protect. *See Leake v. Cain,* 720 P.2d 152 (Colo.1986) (breach of statutory duty is actionable by one who is member of class the statute is designed to protect). Consequently, she has no claim under § 6–1–113(1).

To the extent that *Walter v. Hall, supra,* may suggest that plaintiff's claim here is viable, we decline to follow it.

Accordingly, the judgment is affirmed.

HUME and ROY, JJ., concur.